ARTHUR A. PELOSO AND MARILYN PELOSO, PLAINTIFFS-APPELLANTS, v. HARTFORD FIRE INSURANCE CO., A CONNECTICUT CORPORATION AND SOPHIE STEIN SCHILLER, DEFENDANTS-RESPONDENTS.

Argued November 17, 1969—Decided July 16, 1970.

*Mr. Sam Weiss* argued the cause for appellants.

*Mr. William B. McGuire* argued the cause for respondent Hartford Fire Insurance Co. (*Messrs. Lum, Biunno & Tompkins,* attorneys; *Mr. William J. McGee,* on the brief).

The opinion of the court was delivered by

SCHETTINO, J. Plaintiffs instituted suit in the Superior Court, Law Division, seeking recovery from defendant insurer for damages caused by fire to their home.[1] An answer was filed on behalf of defendant asserting the statute of limitations as an affirmative defense. Thereafter, defendant moved for summary judgment based upon the pleadings, plaintiff Arthur A. Peloso's answers to interrogatories, and an affidavit of defendant's counsel. The trial court, finding that no genuine issue regarding any material fact existed and that the complaint had not been filed within the applicable one-year period of limitation, granted defendant's motion

---

[1] At the time of the fire, the premises were mortgaged to defendant Schiller. The policy provided that any loss shall be payable to her "as mortgagee as interest may appear under all present or future mortgages."

Plaintiffs sued Mrs. Schiller in order to obtain a declaration regarding their respective rights. Mrs. Schiller, in turn, cross-claimed against defendant insurer. Following the decision of the Law Division, defendants entered into a stipulation of dismissal regarding the cross-claim. It was agreed that the cross-claim would be dismissed, but in the event plaintiffs were successful on appeal the cross-claim would be reinstated.

Accordingly, hereinafter all references to defendant will mean the insurance company.

for summary judgment. (102 *N. J. Super.* 357 (Law Div. 1969)). The Appellate Division affirmed in a *per curiam* opinion (105 *N. J. Super.* 474 (App. Div. 1969)), and we certified on plaintiffs' application. (54 *N. J.* 253 (1969)).

Plaintiffs are the owners of a multiple dwelling located in the Borough of Belmar. On or about October 20, 1964, defendant issued a three-year insurance policy covering the multiple dwelling and its contents against loss resulting from fire. The policy contained the standard statutory period of limitation as required by *N. J. S. A.* 17:36–5.20, which provides:

> No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless . . . commenced within twelve months next after inception of the loss.

On September 12 and 13, 1965, the premises in question were damaged by fire. Plaintiffs gave defendant prompt notice of the fire and the resultant damage.[2]

Defendant then advised plaintiffs that it intended to investigate the claim, following which notice would be given of its decision. Between November 1965 and March 1966, plaintiffs were informed by defendant, in response to inquiries made by them regarding their claim, that the claim was being investigated. In February 1966, plaintiffs' counsel informed defendant in writing that suit would be commenced unless the claim was immediately adjusted. In response, defendant notified plaintiffs in writing to submit to depositions regarding the details of the fire as required by the policy. Plaintiffs did so on April 6, 1966.

On May 11, 1966, plaintiffs' counsel telephoned defendant's attorney, who told him that defendant would be ad-

---

[2]The record does not disclose the date on which defendant was notified of the fire, although defendant conceded that "prompt" notice was given. After oral argument, we requested that defendant supplement the record in this regard. Defendant's counsel has since informed us that his records indicate that notice was furnished on September 15, 1965.

vised to reject the claim and that plaintiffs should start suit on the policy. On June 13, 1966, plaintiff husband, who was no longer represented by counsel, called defendant's attorney, who advised plaintiff that defendant was denying liability on his claim. When plaintiff husband requested that the denial of liability be put in writing, defendant's counsel did so by letter dated June 15, 1966, in which he said that pursuant to reports furnished by him to defendant, liability would be "declined insofar as the loss of September 12–13, 1965 is concerned. Please be guided accordingly."

In July 1966, defendant's position was reaffirmed by its counsel in telephone conversations with plaintiff husband. The latter ended their final conversation on July 21, 1966, by stating that he would sue, and was told in turn that this would be the appropriate course to take.

Plaintiffs did nothing further about their claim until March 10, 1967, when they instituted this action to recover for their loss. Their complaint was filed some 18 months after the date of the fire and approximately 9 months after plaintiffs had received the letter of June 15, 1966, formally denying liability.

Before the Law Division, plaintiffs resisted the motion for summary judgment on two grounds, which they again raise on appeal. They contend that the statute of limitation did not begin to run until June 15, 1966, when liability was formally declined and that therefore their suit is timely. Alternatively, they argue that if suit was required within 12 months from the date of the fire, recovery should not be barred because defendant either waived its rights under the provision or should be estopped by its conduct from presenting this defense.

The determination of when the statute of limitation begins to run depends upon the interpretation to be accorded the phrase "inception of the loss" contained in N. J. S. A. 17:36–5.20. The time limitation provision, like all the standard provisions set forth in N. J. S. A. 17:36–5.20, is modeled after the 1943 New York standard policy which has

been adopted by some 46 states. See 3 *Richards, Insurance* (Supp. 1968), § 497, p. 118. As with the other provisions of the standard policies, the limitation provision must be used in "[e]very such fire insurance policy * * * in the words and in the order" set forth in the statute. See *N. J. S. A.* 17:36–5.20.

Although the concept of a standard policy was intended to provide provisions whose meaning would be clear, two divergent views have developed regarding when the limitation period begins to run. The majority of courts, reasoning that the language of the limitation provision is clear and unambiguous, have held that the limitation period should be calculated from the date of the fire or other casualty insured against. See *Sager Glove Corp. v. Aetna Ins. Co.*, 317 *F. 2d* 439, 441 (7th Cir.), *cert. denied*, 375 *U. S.* 921, 84 S. Ct. 266, 11 *L. Ed. 2d* 165 (1963); *Proc v. Home Ins. Co.*, 17 *N. Y. 2d* 239, 243–245, 270 *N. Y. S. 2d* 412, 414–415, 217 *N. E. 2d* 136, 138–139 (1966); *Lardas v. Underwriters Ins. Co.*, 426 *Pa.* 47, 51, 231 *A. 2d* 740, 742 (Sup. Ct. 1967); and cases collected in Annot., 95 *A. L. R. 2d* 1023, 1025–29 (1964).

A few courts, however, have held that the limitation period begins to run from the time the cause of action accrues. See *Finkelstein v. American Ins. Co. of Newark, N. J.*, 222 *La.* 516, 62 *So. 2d* 820 (Sup. Ct. 1952); *Phoenix Ins. Co. v. Brown*, 53 *Tenn. App.* 240, 381 *S. W. 2d* 573 (Tenn. Ct. App. 1964). These courts have reasoned that the limitation provision must be read in conjunction with the provision requiring the insured to supply proof of loss, *see N. J. S. A.* 17:36–5.20 at lines 97–99 ("within sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss"), and the provision regarding the time the insurer becomes liable, *see N. J. S. A.* 17:36–5.20 at lines 150–153 ("The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company. * * *"). In effect, these provisions afford

the insurer immunity from suit for 60 days after the insured has filed his proof of loss.

There obviously is an incongruity in the statute. While the limitation provision purports to give the insured a clear 12 months to institute suit, yet, by virtue of the other statutory provisions cited above, this period is greatly reduced. Nonetheless, we think that the central idea of the limitation provision was that an insured have 12 months to commence suit. This must be so since the period is much shorter than the usual 6 years for ordinary contracts and 16 years for contracts under seal. In addition, the period during which an insured's right to bring suit is postponed is for the benefit of the company so that it can pursue its statutory and contractual rights. Accordingly, it ought not to be charged against the insured's time to bring suit.

The incongruity in the statute and the unfairness caused to an insured is amply demonstrated by the facts in the present case. Plaintiffs gave notice 2 days after the fire. They then had 60 days to file a proof of loss and the insurance company had a further 60 days to decide its liability.[3] During this time, plaintiffs were barred by the statute from instituting suit. Negotiations were still continuing in February 1966, when plaintiffs threatened to sue. In response, defendant demanded that plaintiffs submit to interrogatories as required under the cooperation

---

[3] Although plaintiffs failed to file a proof of loss, they are not barred from instituting suit. *N. J. S. A.* 17:36–6 provides:

The failure of any person, insured against loss or damage by fire in any insurance company doing business under the authority of the department, to furnish proofs of loss shall not be considered a waiver of any rights accruing under the policy of insurance, and shall not debar the person so holding insurance from a recovery under the policy or the collection of the sum which should be paid thereunder, unless after the loss sixty days' notice, in writing. that the company desires the proofs of loss is furnished the insured.

This section shall not be varied, altered, contradicted or affected by any agreement or contract, but shall remain in full force and effect notwithstanding any provision in any contract of insurance or other agreement to the contrary.

clause of the policy. Plaintiffs did so on April 6, 1966. It was not until June 15, 1966, that plaintiffs were notified in writing that liability was declined.

█ The fair resolution of the statutory incongruity is to allow the period of limitation to run from the date of the casualty but to toll it from the time an insured gives notice until liability is formally declined. In this manner, the literal language of the limitation provision is given effect; the insured is not penalized for the time consumed by the company while it pursues its contractual and statutory rights to have a proof of loss, call the insured in for examination, and consider what amount to pay; and the central idea of the limitation provision is preserved since an insured will have only 12 months to institute suit. We think this approach is more satisfactory, and more easily applied, than the pursuit of the concepts of waiver and estoppel in each of the many factual patterns which may arise.

█ In the instant case 2 days had transpired between the start of the fire and the date notice was given thereof to defendant. Thereafter, the parties negotiated for 9 months. During this time, the statute was tolled. It did not begin to run again until June 15, 1966, when plaintiffs were notified in writing that liability was denied. Plaintiffs then had 12 months less 2 days to institute suit. Since they did so within 9 months of June 15, 1966, plaintiffs' suit was timely and summary judgment was improper.

Reversed and remanded, costs to abide the result.

HALL, J. (dissenting) The standard fire insurance policy of New Jersey is not the creation of the insurer, but a contract statutorily prescribed in all its details in 1954. *N. J. S. A.* 17:36–5.20. The terms bind the insurer and insured alike, regardless of the latter's state of knowledge. There is nothing incongruous or ambiguous about the provisions thereof here involved. Nothing could be plainer than the language:

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss.

"Inception of the loss" can only mean, in the case of a fire loss, the date of the fire and not the accrual of a cause of action. The earlier standard policy said "after the fire". Fire insurance policies now customarily cover risks in addition to fire, such as lightning and windstorm. Thus, the change in wording, only to square with the additional coverages.

The very language of the quoted provision clearly indicates that the legislature recognized the other provisions of the policy, relative to the furnishing of proof of loss (modified in New Jersey by *N. J. S. A.* 17:36–6) and to the loss payment date, relied upon by the majority, and still said any action had to be commenced within a year of the loss. This means without "time out".

When the legislature has spoken so plainly, its command should not be open to judicial change. *Cf. Restaurant Enterprises, Inc. v. Sussex Mutual Insurance Co.*, 52 *N. J.* 73, 78 (1968) (dissenting opinion).

The precise question — a claim of tolling of the 12 month period by reason of the proof of loss requirement and the 60 day span allowed the company to make payment — arose recently in New York (whose standard policy New Jersey copied) in a similar factual situation. *Proc v. Home Insurance Company,* 17 *N. Y.* 2d 239, 270 N. Y. S. 2d 412, 217 *N. E.* 2d 136 (1966). There Judge Fuld reached the result I urge as the only proper one here, saying:

The argument not only disregards the plain meaning of the policy language but ignores both its history and the intention of those who wrote it. The Legislature, in enacting section 168 of the Insurance Law, gave careful attention to the very problem presented by this case. Considering the manner in which the phrasing evolved over the years, there cannot be any doubt that the period of limitations was meant to run from the date of the fire, even though a cause of action against the insurer had not then accrued. The court will not subvert

this clearly expressed legislative design — and rewrite nearly 90 years of history — by deriving from the less specific terms of another provision (CPLR 204, subd. [a]) just the opposite intention and meaning.

Nor do we perceive anything unfair in reaching the result we do. If conduct or action on the part of the insurer is responsible for the insured's failure to comply in time with the conditions precedent, injustice is avoided and adequate relief assured, without doing violence to the plain language used by the Legislature, by resort to traditional principles of waiver and estoppel. (270 N. Y. S. 2d at 415, 217 N. E. 2d at 139).

No such equities are even suggested in this case.

I would affirm the judgment of the Appellate Division.

*For reversal and remandment* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and HANEMAN—6.

*For affirmance*—Justice HALL—1.