INTERNATIONAL SCHOOL SERVICES, INC., Plaintiff,

v.

NORTHWESTERN NATIONAL INSURANCE COMPANY and Albany Insurance Company, Defendants.

NORTHWESTERN NATIONAL INSURANCE COMPANY and Albany Insurance Company, Third–Party Plaintiffs,

v.

M.V. "SAM HOUSTON", M.V. "STONEWALL JACKSON", their engines, boilers, etc. Third–Party Defendants.

No. 87 Civ. 1645 (SWK).

United States District Court, S.D. New York.

April 5, 1989.

Philip J. Curtin, New York City, for plaintiff.

Bigham, Englar, Jones and Houston, New York City by Helen M. Benzie, for defendants and third-party plaintiffs.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This is an insurance action arising from goods damaged during transport. This case is presently before the Court on defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants argue that summary judgment is appropriate because plaintiff's failure to comply with express provisions in its marine cargo insurance policy bars recovery. For the reasons stated below, the defendants' motion is granted.

### Background

Plaintiff International School Services, Inc. ("I.S.S."), the shipper, seeks to recover under its marine cargo insurance policy for a damaged shipment of school supplies. Plaintiff had agreed to provide a cargo of school supplies to the Baghdad International School ("B.I.S.") in Baghdad, Iraq. Defendant Northwestern National Insurance Company ("Northwestern") insured the shipment and subsequently transferred the policy to defendant Albany Insurance Company ("Albany"). Northwestern and Albany (collectively, the "Underwriters") brought a third party action against Waterman Steamship Corporation ("Waterman"), the carrier, and the two vessels which carried the shipment, the M.V. "Sam Houston" and the M.V. "Stonewall Jackson". Underwriters seek summary judgment on the grounds that I.S.S.'s action is barred by the "Time For Suit", "Notice of Loss", and "Sue and Labor and Waiver" clauses of the policy.[1] Jurisdiction is based on diversity of citizenship, as well as on the admiralty and maritime jurisdiction of the Court.

I.S.S.'s freight forwarder planned to ship the supplies by sea between New York and Aqaba, Jordan on Waterman's vessels, and then overland to Baghdad, Iraq. The shipment left New York in October 1984, on board the "Sam Houston" and was transferred to the "Stonewall Jackson" at Port Suez on December 9, 1984. The cargo was discharged from the latter vessel at Aqaba between January 2 and 8, 1985, by Waterman's agents who discovered that the cartons containing the supplies were damaged by seawater. According to plaintiff's Memorandum in Opposition at 7, Waterman did not transship the goods to Baghdad after discovering the damaged goods, because the law of Jordan would have conferred liability upon Waterman as the carrier last in possession of the cargo.

On June 16, 1985, BIS first notified plaintiff that the shipment had not been received. Plaintiff claims that it did not learn that the cargo was actually damaged until July 1, 1985.[2] Plaintiff orally advised defendants of the loss on July 15, 1985, and sent written notice shortly thereafter. The underwriters requested and received authorization from plaintiff to sue Waterman in November 1985. Plaintiff submits that the underwriters subsequently asked for and were granted extensions of time on their authorization to sue Waterman.[3] Correspondence concerning the proof of damage

---

1. In relevant part, the "Time for Suit" clause provides:

   It is a condition of this Policy that no suit or action on this Policy for the recovery of any claim shall be sustainable in any Court ... unless commenced within twelve (12) months next after the calendar date of the happening of the physical loss or damage out of which the said claim arose....

2. This fact is in dispute. However, it bears no relevance to the determination of the time for suit, which begins at the time of the actual damage, not at the time the plaintiff learns of the damage.

3. This fact is indicated in plaintiff's memorandum and Rule 3(g) Counter Statement. While the plaintiff doesn't cite any evidence in support of the alleged extensions, the Court, nevertheless, accepts these alleged extensions as true for the purpose of this motion.

and coverage of the claim continued until May 14, 1986, at which time the underwriters formally denied the claim in writing and reserved all rights under the policy. In subsequent correspondence, plaintiff's corporate counsel asked the defendants to reconsider the matter and requested clarification of the defendants' position. The underwriters confirmed their declination in letters dated August 28 and October 21, 1986. Plaintiff filed suit on March 11, 1987.

## Discussion

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). In testing whether the movant has met this burden, the Court must resolve all ambiguities against the movant. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

■ The underwriters seek summary judgment, alleging that plaintiff's action is time barred under the time for suit provision in the policy. Since the actual date of damage is unknown, the Court shall assume that the date of loss is January 8, 1985, which is the last possible date the injury could have occurred, as it was the last day the cargo was unloaded at Aqaba. Even assuming a date of loss most favorable to plaintiff—January 8, 1985—two years, two months, and three days passed between the date of loss and the commencement of this action. Plaintiff clearly has not initiated suit "within twelve (12) months next after the calendar date of the happening of the physical loss or damage out of which the said claim arose" as required by the time for suit clause in the policy.[4]

Plaintiff defends its delay in filing suit on the grounds that defendants have waived, or alternatively, are estopped from asserting the time for suit clause as a defense. Additionally, plaintiff argues that New Jersey tolling law applies, and that the suit is not time barred because the time for suit is tolled from the date the insurer is given notice of the damage until the insurer formally denies coverage of the claim. Defendants contend that no waiver or estoppel has occurred and that this suit is governed by New York law, under which the time for suit is not tolled. Alternatively, defendants argue that even if the Court applies New Jersey's tolling provisions, plaintiff's action remains time barred.

■ State substantive law governs cases involving a marine insurance policy unless there is an applicable federal admiralty rule. *Navegacion Goya, S.A. v. Mutual Boiler & Mach. Ins. Co.*, 411 F.Supp. 929, 934 (S.D.N.Y.1975) (citing *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955)). No applicable admiralty rule has been cited by either party. Therefore, this Court applies the choice of law provisions of the forum state, New York, to determine the appropriate state substantive law. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). New York law utilizes the 'center of gravity' or 'grouping of contacts' approach to solve choice of law problems by applying the law of the jurisdiction with the most significant contacts with the disputed matter. *St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc.*, 687 F.Supp. 820, 826 (S.D.N.Y.1988). Under this approach, New York law applies because New York has more significant contacts with the disputed matter than New Jersey. The contract was negotiated and entered into in New York, the shipment left a New York port, I.S.S.'s freight forwarder is located in New York, and plaintiff chose to litigate in a New York forum. By way of comparison,

---

4. The Court considers the "Time for Suit" clause determinative, and therefore, it is not necessary to consider defendants' alternate defenses under the "Notice of Loss" and "Sue and Labor and Waiver" clauses of the policy.

New Jersey is plaintiff's principal place of business, and the insurance contract was delivered to, and accepted by, the plaintiff in New Jersey.

■ Although New York law applies in this action, plaintiff's claim would be time barred under New Jersey law, as well as New York law. "Under New Jersey law, ... the limitations period contained in the policy begins to run from the date of the loss, but is tolled from the time the insured gives notice of the loss until the time the company formally denies liability." *Solomon Lieberman and Chevra Lomdei Torah v. Interstate Fire & Casualty Co.*, 768 F.2d 81, 82 (3d Cir.1985) (citing *Peloso v. Hartford Fire Ins. Co.*, 56 N.J. 514, 517, 267 A.2d 498, 501 (1970)). Applying this New Jersey toll, the time for suit period would be tolled from July 15, 1985, the date of notice to the underwriters, to May 14, 1986, the date the underwriters formally denied the claim in writing, for a total tolling period of ten months.[5] Subtracting ten months from the period of time between the date of injury and the commencement of suit—two years, two months, and three days—would not rescue plaintiff's complaint from the contractual time bar. Instead, the period of time after the toll would be one year, four months, and three days. Even after the ten month toll provided for by New Jersey law, the plaintiff's complaint was filed over four months after the time for suit had passed.

■ Plaintiff also alleges that defendants waived, or are estopped from asserting, the time for suit clause for three reasons. First, plaintiff claims that defendants' actions to obtain plaintiff's permission to commence suit against Waterman and to obtain extensions on its time to sue Waterman had the effect of implicitly granting plaintiff a similar extension of time. Second, plaintiff argues that defen-

dants misled plaintiff as to who held the responsibility of conducting the survey of the damaged shipment, and the ensuing confusion led to delays in filing proofs of loss. Third, plaintiff contends that under general industry standards, defendants' bad faith conduct estops it from raising its defenses under the policy. This Court finds little merit in these arguments.

New York law recognizes waiver as "an intentional relinquishment of a known right [which] should not be lightly presumed." *Gilbert Frank Corp. v. Federal Ins. Co.*, 70 N.Y.2d 966, 968, 520 N.E.2d 512, 514, 525 N.Y.S.2d 793, 795 (1988). Estoppel occurs where an insurer's misleading conduct lulls the insured into sleeping on its rights under an insurance contract. *Id.; see also Kahn v. Lumbermens Mut. Casualty Co.*, 293 F.Supp. 985, 989 (E.D.N.Y.1968). In a similar action involving a "special cargo policy", this Court denied plaintiff's waiver argument and granted defendant's motion for summary judgment based on plaintiff's failure to comply with an almost identical one year, time for suit clause. *ISSA v. Reliance Ins. Co. of New York*, 685 F.Supp. 47 (S.D.N.Y.1987). This Court found that the insurer's investigation of the claim beyond the one year contractual period, its advice to plaintiff to take appropriate steps against the third party ocean carrier, and its requests for additional documentation failed to mislead or lull plaintiff into inactivity. *Id.; see ISSA v. Reliance Ins. Co. of New York*, 683 F.Supp. 82, 83 (S.D.N.Y.1988) (Court rejected waiver argument again, granting summary judgment in subsequent action between same parties on similar facts); *Arkin–Medo Corp. v. St. Paul Fire & Marine Ins. Co.*, 585 F.Supp. 11 (E.D.N.Y.1982), *aff'd mem.*, 742 F.2d 1430 (2d Cir.1983) (insurer not estopped from raising contractual limitation defense where it granted extensions on filing proof of loss and continued its investigation after

---

**5.** May 14, 1986 is the date of formal denial, not October 21, 1986, as plaintiff contends, because it was the first date the underwriters sent written denial of the claim. The subsequent communications through October 21, 1986, did not

extend the tolling period. *See Peloso, supra,* 56 N.J. 514, 267 A.2d 498, 502 (the court used the date of the first letter denying the claim, not the dates of subsequent telephone conversations confirming the company's position).

limitations period expired); *Gilbert Frank Corp. v. Federal Ins. Co.*, 70 N.Y.2d 966, 520 N.E.2d 512, 525 N.Y.S.2d 793 (1988) (no waiver or estoppel where evidence of communications or settlement negotiations between the insured and insurer occurred after expiration of the twelve month limitations period).

The Court does not find support for implying the underwriters' waiver of the time to sue clause. Underwriters' actions do not reasonably suggest "a clear manifestation of intent ... to relinquish the protection of the contractual limitations period.... Nor do the facts show defendant[s] ... otherwise lulled plaintiff into sleeping on its rights under the insurance contract." *Gilbert Frank Corp., supra*, 70 N.Y.2d at 968, 520 N.E.2d at 514, 525 N.Y. S.2d at 795. Contrary to plaintiff's contentions, defendants' request for authorization to sue Waterman was not an express indication that Underwriters waived any contractual rights under the policy. The Court finds that underwriters' alleged grants of extension to sue Waterman did not imply similar grants of extensions to sue the underwriters under the policy. Plaintiff provides no persuasive authority for this implied extension in its memorandum or affidavits, and the Court finds none.

Plaintiff further contends that the insurance policy is ambiguous regarding which party is responsible for conducting the survey of the damaged shipment, and that such ambiguities should be construed against the defendant. Plaintiff suggests that the ensuing confusion of this clause construed together with defendants' bad faith demand that plaintiff conduct the survey effectively estops the assertion of the time for suit clause. The Court finds that no such ambiguity exists, and that defendants' request was proper under the policy. The "Payment of Loss Clause" clearly provides:

> In case of loss, such loss to be paid *not later than* thirty days after proof of loss and proof of interest in the property hereby insured.... Proofs of loss to be authenticated by the agents of the Assurers, if there be one at the place such proofs are taken.

Plaintiff has not argued that the underwriters had agents available "at the place such proofs are taken." On the contrary, the defendants expressly notified plaintiff that plaintiff should conduct the required survey. The policy provides that the claimant has the primary responsibility to furnish proof of loss and that the underwriters may complete the survey if they have agents available, not that the underwriters have any contractual duty to survey.

Plaintiff's third argument, which is that the underwriters treatment of the claim was in bad faith and not in conformity with general industry standards, is also without merit. This Court finds no evidence of bad faith by the underwriters nor does plaintiff clearly elaborate exactly what the "industry standards" are against which defendants' conduct should be measured. Therefore, the Court finds that the underwriters did not conduct themselves in a way which lulled plaintiff into a state of complacency. On the contrary, plaintiff appears to have slept on its own rights.

### Conclusion

As plaintiff did not file its claim within the twelve month time for suit period, its action is time barred. Defendants have not waived the time for suit clause, nor are they estopped from asserting it as a defense. Defendant's motion for summary judgment is granted.

SO ORDERED.