Fred HAARDT, Virginia
Haardt, Plaintiffs,

v.

The FARMER'S MUTUAL FIRE INSUR-
ANCE COMPANY OF SALEM COUN-
TY, John Does, Defendants.

Civ. A. No. 91–272.

United States District Court,
D. New Jersey.

July 7, 1992.

F. Michael Daily, Jr., Quinlan, Dunne, Daily & Hibbins, Merchantville, N.J., for plaintiffs.

Leslie Ann Lucker, Cozen & O'Connor, Westmont, N.J., for defendant Ins. Co.

## OPINION

BROTMAN, District Judge:

This action arises out of several property insurance policies issued by the Farmer's Mutual Fire Insurance Company of Salem County ("Defendant Insurance Company") to the plaintiffs Fred and Virginia Haardt. The court has jurisdiction pursuant to 28 U.S.C. § 1332. Presently before the court is the motion of the Defendant Insurance Company for summary judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

In their complaint filed January 19, 1991,[1] Fred and Virginia Haardt seek to recover on insurance policies issued by the Defendant Insurance Company for losses allegedly sustained at their property at 5425 Simpson Avenue in Ocean City, New Jersey and covered by the insurance policies. They also seek to recover consequential and punitive damages for the bad faith refusal of the Defendant Insurance Company to pay for these losses. The Haardts contend that the Defendant Insurance Company refused to reimburse them for losses sustained to the Ocean City property due to a June 18, 1983 windstorm and the January 22, 1985 freezing and breaking of pipes caused by below zero temperatures. The Haardts seek damages as a result of the June 18, 1983 and January 22, 1985 incidents as follows: 1) $156,000.00 due to

the June 18, 1983 windstorm; 2) $170,-000.00 due to the January 22, 1985 freezing and breaking of pipes; 3) damages for the devaluation of the Ocean City property; 4) damages for lost rents; and 5) punitive damages.[2]

On June 18, 1983, the Ocean City property was covered by Defendant Insurance Company under a contents and dwelling fire insurance policy, F171347 and under a fire insurance policy for rental value, F171331. The Defendant Insurance Company denied coverage for the June 18, 1983 incident by way of letter dated July 25, 1985 sent from its adjuster, Ed Harrold, to the Haardts' attorney, David Frisch.

On January 22, 1985, the Ocean City property was covered by the Defendant Insurance Company under a combination dwelling policy, CD12074. This policy contained a "suit limitation" provision requiring that suits under the policy be commenced within twelve months after the loss and a "cooperation clause" requiring the Haardts to cooperate with the Defendant Insurance Company during its investigation of any losses. In addition, the policy contained a "freezing pipe" exclusion which excluded losses from freezing occurring while the property was unoccupied unless the Haardts exercised caution and diligence to prevent freezing, and a provision providing coverage for lost rents.

The Haardts notified the Defendant Insurance Company of its claim on January 28, 1985, six days after the alleged loss. On February 12, 1985, Jack King, an adjuster for the Defendant Insurance Company, wrote a preliminary report in connection with the January 22, 1985 claim. He stated that he made an inspection of the Ocean City property on February 6, 1985 and that the:

[c]laim is being made for freezing damage with resulting water damage that occurred on January 22, 1985. As a result of the extreme cold weather, several

---

**1.** An amended complaint was filed March 1, 1991 in order to satisfy the $50,000.00 jurisdictional requirement of 28 U.S.C. § 1332(a). The complaint was not otherwise changed.

**2.** The Haardts claim for pain and suffering has been withdrawn in their response to the Defendant Insurance Company's motion for summary judgment.

water lines burst and froze with resulting water damage throughout the entire first floor apartment. Wall to wall carpeting throughout the entire first floor sustained water damage as well as the hardwood floors in all of the rooms.

The Defendant Insurance Company requested repair estimates from the Haardts in late April or early May of 1985. It is unclear whether the Haardts ever supplied these estimates but the Defendant Insurance Company admits to having received estimates on June 21, 1985. Although Virginia Haardt failed to appear at a July 14, 1985 appointment with the Defendant Insurance Company's adjusters, King and Harrold, Frisch met with these adjusters on July 24, 1985 at the Ocean City property to review his clients' claims.

On December 11, 1985, the Defendant Insurance Company informed the Haardts that its adjusters could no longer deal directly with them regarding their claims since the Haardts had hired Frisch to represent them. The Defendant Insurance Company closed its file for this loss on April 14, 1986 because it claimed it did not hear from Frisch. Even though the Defendant Insurance Company denied liability for the June 18, 1983 claim on July 25, 1985, there is no record of it ever notifying the Haardts that it denied liability for the January 22, 1985 claim.

In its motion for summary judgment, the Defendant Insurance Company makes the following arguments: 1) the Haardts claim for the June 18, 1983 loss is barred by the six year New Jersey statute of limitations governing contract actions, N.J.S.A. 2A:14-1; 2) the Haardts claim for the January 22, 1985 loss cannot be maintained since they did not comply with the insurance policy's "suit limitation" provision and "cooperation clause" and because the insurance policy contained a "freezing pipe" exclusion; and 3) the Haardts claims for the devaluation of property, loss of rents and punitive damages are barred since New Jersey courts do not permit consequential or punitive damages to be recovered in an insurance contract dispute.

## II. DISCUSSION

The standard for granting summary judgment is a stringent one. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir.1986); Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the court must view all doubt in favor of the non-moving party. Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n. 2 (3d Cir.1983), cert. denied, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 874 (3d Cir.1972). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that "a motion for summary judgment must be granted unless the party opposing the motion can produce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." J.E. Mamiye & Sons, Inc. v. Fidelity Bank, 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring) (citing Anderson, 477 U.S. 242, 106 S.Ct. 2505, and Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. Anderson, 477 U.S. at 249-50, 106 S.Ct. at 2510-11.

### 1) June 18, 1983 Claim

■ The Defendant Insurance Company argues that the Haardts filed their complaint on January 19, 1991, over six years from the date of the alleged June 18, 1983 loss resulting from the windstorm. As a result, it argues that the Haardt's claim for the June 18, 1983 loss is barred by the six year New Jersey statute of limitations governing contract actions, N.J.S.A. 2A:14–1. The Haardts argue that their complaint was filed within the six year statute of limitations period since their cause of action for the June 18, 1983 loss did not accrue until June 25, 1985, the date the Defendant Insurance Company denied their claim for damages.

Section 2A:14–1 provides in relevant part that "[e]very action at law ... for recovery upon a contractual claim or liability, express or implied ... shall be commenced within [six] years after the cause of any such action shall have accrued." In New Jersey, the statute of limitations applicable to a suit on a policy of insurance is six years "absent a provision in the insurance policy or an express statute to the contrary." *Walkowitz v. Royal Globe Insurance Company,* 149 N.J.Super. 442, 448, 374 A.2d 40 (App.Div.1977); *see also Garcia v. Snedeker,* 199 N.J.Super. 254, 261, 489 A.2d 175 (App.Div.1985); *Casey v. Selected Risks Insurance Co.,* 176 N.J.Super. 22, 28, 422 A.2d 83 (App.Div.1980). A cause of action accrues and the statute of limitations begins to run when the plaintiff "discovers, or by exercise of reasonable diligence and intelligence should have discovered, facts which form the basis of a cause of action." *O'Keeffe v. Snyder,* 83 N.J. 478, 491, 416 A.2d 862 (1980); *accord Mancuso v. Mancuso,* 209 N.J.Super. 51, 56–57, 506 A.2d 1253 (App.Div.1986).

In *Royal Indemnity Co. v. Petrozzino,* 598 F.2d 816 (3d Cir.1979), the Third Circuit invoked this New Jersey discovery principle to toll the six year statute of limitations, N.J.S.A. 2A:14–1. It held that a bank insurer had timely filed an action against a bank robber even though the action was filed over six years after the robbery occurred. *Id.* at 821. Since none of the eyewitnesses were able to identify the bank robber immediately after the robbery and since it took sixteen months for the state law enforcement officials to compile sufficient evidence to file a criminal information against the bank robber, the Third Circuit held that reasonable diligence on the part of the bank insurer would have failed to disclose the existence of an actionable claim six years prior to filing the complaint. *Id.* (robbery took place on September 4, 1964, criminal information filed March 29, 1966 and complaint filed December 22, 1970).

Unlike the situation in *Royal Indemnity,* the Haardts discovered or should have discovered the alleged property damage resulting from the windstorm immediately after its occurrence on June 18, 1983. Since the complaint was filed on January 19, 1991, over six years after the Haardt's cause of action accrued, it is barred pursuant to N.J.S.A. 2A:14–1.

In arguing that their cause of action did not accrue until June 25, 1985, the date the Defendant Insurance Company denied their claim for damages, the Haardts are invoking the doctrine of equitable estoppel to bar the statute of limitations defense. In New Jersey, "equitable estoppel has been used to prevent a defendant from asserting the statute of limitations when the defendant engages in conduct that is calculated to mislead the plaintiff into believing it is unnecessary to seek civil redress." *W.V. Pangborne & Co. v. New Jersey Department of Transportation,* 116 N.J. 543, 553, 562 A.2d 222 (1989); *accord Lopez v. Swyer,* 62 N.J. 267, 275 n. 2, 300 A.2d 563 (1973); *Deluxe Sales v. Hyundai Engineering,* 254 N.J.Super. 370, 378–379, 603 A.2d 552 (App.Div.1992).

The Haardts have not presented any evidence that the Defendant Insurance Company engaged in conduct to mislead them that litigation could be avoided or that it would waive its defenses on the June 18, 1983 claim including the statute of limitations. Moreover, the Haardts had approximately four years after the Defendant Insurance Company denied liability to file a timely complaint. Since the Haardts did

not do so, the Defendant Insurance Company's motion for summary judgment will be granted with respect to the June 18, 1983 claim.

### 2) January 22, 1985 Claim
#### a) "Suit Limitation" Provision

■ The Defendant Insurance Company argues that the Haardt's claim for the alleged loss due to the January 22, 1985 freezing and breaking of pipes cannot be maintained since this lawsuit was not brought within the twelve month period allowed by the policy's "suit limitation" provision. The combination dwelling policy at issue, CD12074, contained a "suit limitation" provision which stated that "[n]o suit or action may be made against us unless all applicable requirements of this policy have been fully complied with, and if the coverage pertains to real or personal property, unless commenced within [twelve] months after the loss."

In *Peloso v. Hartford Fire Insurance Co.*, 56 N.J. 514, 267 A.2d 498 (1970), the New Jersey Supreme Court held that the twelve month limitation period contained in the policy begins to run from the date of the casualty, but is tolled from the time an insured gives notice until liability is formally denied. *Id.* at 521, 267 A.2d 498; *accord International School Services, Inc. v. Northwestern National Insurance Co.*, 710 F.Supp. 86, 89 (S.D.N.Y.1989); *Impex Agricultural Commodities v. Leonard Parness Trucking Corp.*, 582 F.Supp. 260, 263 (D.N.J.1984); *Bell v. Merchants & Businessmen's Mutual Insurance Co.*, 241 N.J.Super. 557, 566, 575 A.2d 878 (App.Div. 1990). Since the plaintiffs in *Peloso* notified the insurer within two days of the fire and the insurer formally denied liability in writing nine months later, the New Jersey Supreme Court ruled that the plaintiffs suit was timely when filed nine months after the insurer formally notified them that liability was denied. *Peloso* at 517–518, 521. (fire occurred on September 12–13, 1965, notice of fire given on September 15, 1965,

formal denial of liability in writing given on June 15, 1966 and complaint filed on March 10, 1967).[3]

Similarly, in *Solomon Lieberman v. Interstate Fire & Casualty Co.*, 768 F.2d 81 (3d Cir.1985), the insurer tried to demonstrate that a mortgagee received notice of the insurer's denial of liability three years earlier since in a previously filed suit by the mortgagor against the insurer, the insurer denied liability in its answer. *Id.* at 82. Although the mortgagor and mortgagee were represented in their respective actions by the same attorney, the Third Circuit ruled that the insurer did not demonstrate that the mortgagee received notice by the insurer's answer to the mortgagor's complaint since there was no evidence that the attorney was representing the mortgagee at the time the answer was filed. *Id.* at 84.

The Haardts gave the Defendant Insurance Company notice of the alleged January 22, 1985 loss on January 28, 1985. This notice tolled the twelve month "suit limitation" provision in the policy until the Defendant Insurance Company notified the Haardts that it was denying liability. The Defendant Insurance Company must demonstrate that the Haardts were notified that liability was denied at least one year less six days before they filed their complaint on January 19, 1991 in order for its motion for summary judgment to be granted. However, the Defendant Insurance Company has produced no evidence demonstrating, nor has it argued, that the Haardts were notified that liability had been denied. The court will deny the Defendant Insurance Company's motion for summary judgment based on the "suit limitation" provision as it relates to the January 18, 1985 claim.

#### b) "Cooperation Clause"

■ The Defendant Insurance Company also argues that the Haardts cannot recover for the January 22, 1985 loss since it

---

**3.** The *Peloso* holding is limited to cases involving insurance contracts containing the "suit limitation" provision and does not affect the statute of limitations analysis applied *supra* pursuant to N.J.S.A. 2A–14:1 where New Jersey courts have invoked the discovery and the equitable estoppel doctrines.

failed to cooperate with it during its investigation of the loss. Since this lack of cooperation violates the policy's "cooperation clause," the Defendant Insurance Company argues that coverage under the policy cannot be awarded. Virginia Haardt admits to having missed her July 14, 1985 appointment with the Defendant Insurance Company's adjusters due to medical reasons. The combination dwelling policy CD12074 contained a "cooperation clause" under the heading "General Duties of the Insured." The clause states:

> The insured is required to cooperate with us in matters pertaining to any loss, claim, or suit. This cooperation may include furnishing information reasonably required by us to investigate and settle claims or losses, as well as the following:
> -attendance at hearings and trials;
> -assistance in providing evidence and obtaining the attendance of witnesses;
> -assistance in making settlements, in the conduct of suits, and in enforcing any right of recovery against others who may be liable to the insured;
> -filing loss information and exhibiting damaged property as often as we reasonably required;
> -furnish all relevant receipts, records or other documents as often as we reasonably require, and allow us to make all copies of such items.

■ In New Jersey, the failure of an insured to comply with a "cooperation clause" will not cause a forfeiture of insurance benefits unless the insurer demonstrates that it will suffer appreciable prejudice. *Oritani Savings & Loan Association v. Fidelity & Deposit Co. of Maryland,* 744 F.Supp. 1311, 1317 (D.N.J.1990); *Cooper v. Government Employees Insurance Co.,* 51 N.J. 86, 94, 237 A.2d 870 (1968); *see Yannitsadis v. Mission National Insurance Co.,* 1986 WL 1706 (D.N.J. February 6, 1986) (prejudice standard ap-

plies to property insurance policies). Prejudice will not be presumed but must be proved, and the burden of proof is on the insurer. *Aetna Casualty & Surety Co. v. Farrell,* 855 F.2d 146, 151 (3d Cir.1988); *Cooper* at 94 n. 3.

The Defendant Insurance Company has not demonstrated that the Haardts' failure to cooperate caused it appreciable prejudice with respect to the January 22, 1985 claim. Although Virginia Haardt missed her appointment with the Defendant Insurance Company's adjusters on July 14, 1985, the adjusters, King and Harrold, met with Frisch, the Haardts' attorney, on July 24, 1985 to review the Haardts claims at the Ocean City property. King also inspected the property previously on February 6, 1985. Moreover, although it is unclear whether or not the Haardt's provided the Defendant Insurance Company with repair estimates in late April or early May of 1985, the Defendant Insurance Company admits to having these estimates on June 21, 1985. The Defendant Insurance Company's motion for summary judgment based on the "cooperation clause" of the January 22, 1985 policy is also denied.[4]

### c) "Freezing Pipe" Exclusion

■ The Defendant Insurance Company also maintains that the Haardts cannot recover for the January 22, 1985 loss due to the policy's "freezing pipe" exclusion. The Haardts argue that despite their caution and diligence, the loss was unavoidable due to the extremely cold temperatures on January 22, 1985 and consequently covered under the "freezing pipe" exclusion. The "freezing pipe" exclusion of combination dwelling policy CD12074 states:

> We do not cover loss resulting directly or indirectly as follows.... Loss from freezing of a home appliance, or plumbing, heating, or air conditioning system, including loss from their discharge, leakage, or overflow, which occurs while

---

4. The Defendant Insurance Company has also not explained why it closed its file on April 14, 1986 even though it did not hear from Frisch. Once notified by the Haardts of their claim, it was the Defendant Insurance Company's responsibility to notify them whether coverage would be provided. *See Peloso supra.* The De-

fendant Insurance Company has also not explained how Frisch's failure to contact it violated the "cooperation clause" which requires "assistance" and "cooperation," not continued inquiries concerning whether coverage would be provided.

your residence is vacant, unoccupied, under construction, or closed during an absence of all insureds. But such loss is covered if you, and those designated to care for the premises exercise caution and diligence to prevent freezing at such times.

The issue of whether the Haardts exercised caution and diligence to prevent the pipes from freezing on January 22, 1985 involves a factual determination that must be resolved by the finder of fact. *See JMB Enterprises v. Atlantic Employers Insurance Co.*, 228 N.J.Super. 610, 550 A.2d 764 (App.Div.1988). The finder of fact must determine what actions, if any, were taken by the Haardts to prevent freezing and whether the freezing was unavoidable despite these actions due to the extremely cold temperatures. Since the Defendant Insurance Company has not carried its burden of establishing the absence of a genuine issue of material fact, the court will deny its motion for summary judgment based on the "freezing pipe" exclusion as well.

### 3) *Consequential and Punitive Damages*

The Defendant Insurance Company also makes the argument that the Haardts claims for consequential damages-the devaluation of the property and the loss of rents-and punitive damages is barred since New Jersey courts do not permit the recovery of consequential and punitive damages in insurance actions. In response, the Haardts argue that their claim for lost rents is covered by the policy in effect on January 22, 1985.

The combination dwelling policy CD12074 provides that the Defendant Insurance Company provides coverage for "[y]our loss of rents, less non-continuing expenses, incurred while that part of the residence premises regularly held by you for rental for others is made incapable of being occupied by a property loss we cover here." The court agrees with the Haardts that their claim for lost rents is covered by the policy in effect on January 22, 1985 and will deny the Defendant Insurance Company's motion with respect to that claim.[5]

■ The court must still determine whether the Haardt's claims for consequential and punitive damages are permitted for the alleged bad faith refusal of the Defendant Insurance Company to pay its claim under the combination Dwelling policy CD12074 in effect on January 22, 1985. Under New Jersey law, an insured cannot maintain an action for punitive damages for the insurer's wrongful, bad faith refusal to provide coverage or for the bad faith delay in handling claims. *Carfagno v. Aetna Casualty & Surety Co.*, 770 F.Supp. 245, 246 (D.N.J.1991); *Pickett v. Lloyds*, 252 N.J.Super. 477, 600 A.2d 148 (App.Div. 1991). Whether an insured can maintain an action for consequential damages[6] for the insurer's refusal to pay benefits is unclear since the New Jersey Supreme Court has not decided the issue[7] and because the New Jersey federal and state courts which have recently considered the issue reach different conclusions.

The latest pronouncement by the New Jersey courts on the availability of consequential damages in an action for bad faith refusal to process and pay an insurance claim is by the Appellate Division of the Superior Court in *Pickett.* The *Pickett* court held that an insured has a cause of action against an insurer for consequential damages due to the insurer's bad faith in processing and paying a claim. *Pickett* at

---

**5.** Since the Haardts claim for the June 18, 1983 loss is barred by the statute of limitations, the claim for lost rents only applies to those lost rents resulting from the January 22, 1985 freezing and breaking of pipes.

**6.** Consequential damages are defined as "[s]uch damage, loss or injury as does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act." Black's Law Dictionary 390 (6th ed. 1990).

**7.** The New Jersey Supreme Court will have the opportunity to consider this precise issue during its 1992–1993 term. It granted certification in *Pickett,* discussed *infra,* on February 27, 1992.

485–490, 600 A.2d 148.[8] The *Pickett* court disagreed with the United States District Court of New Jersey holding in *Wine Imports, Inc. v. Northbrook Property and Casualty,* 708 F.Supp. 105 (D.N.J.1989) that consequential damages are not recoverable since *Wine Imports* relied on six decisions of the New Jersey Superior Court, Appellate Division, five of which related to punitive damages[9] and one which related to damages for emotional and physical distress[10] for the bad faith breach on the part of the insurer. *Pickett* at 486–488, 600 A.2d 148; *Wine Imports* at 106–107. After the *Wine Imports* decision was rendered and before the Appellate Division of the New Jersey Superior Court decided *Pickett,* the United States District Court of New Jersey in *Carfagno* held that consequential damages were not recoverable relying on the decision of *Wine Imports.*[11]

"An intermediate appellate state court ... is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). "In the absence of an authoritative pronouncement by a state's highest court, [a federal court] may give serious consideration to the opinion of an intermediate appellate court and look to that source for an indication of how the state Supreme Court would likely decide the question presented." *Aetna Casualty & Surety Co. v. Farrell,* 855 F.2d 146, 148–149 (3d Cir.1988).

The court has reviewed the decisions of the Appellate Division of the New Jersey Superior Court relied on by the *Wine Imports* court and agrees with the *Pickett* and *Oritani* courts that none of them relate to the consequential damages at issue in this case. Moreover, since *Carfagno* is based on the reasoning of *Wine Imports,* the court cannot agree with its holding that, in New Jersey, consequential damages are barred for the bad faith refusal to pay a claim. Accordingly, the court will rely on the Appellate Division of the New Jersey Superior Court holding in *Pickett* for how the New Jersey Supreme Court would likely decide this issue and permit the Haardts' claims for consequential damages for the devaluation of the Ocean City property and lost rents. However, since punitive damages are not permitted based on the alleged bad faith breach on the part of an insurer, the court will grant the Defendant Insurance Company's motion for summary judgment with respect to that claim.

## III. CONCLUSION

For the foregoing reasons, the Defendant Insurance Company's motion for summary judgment will be granted in part in that the June 18, 1983 insurance claim and the punitive damages claim will be dismissed. The motion for summary judgment will also be denied in part in that the January 22, 1985 insurance claim and the claim for consequential damages will not be dismissed.

---

**8.** This cause of action arises out of the breach of the covenant of good faith and fair dealing implied in all insurance contracts in New Jersey. *Id.* at 485, 600 A.2d 148.

**9.** *Pierzga v. Ohio Casualty Group of Insurance Companies,* 208 N.J.Super. 40, 504 A.2d 1200 (App.Div.1986); *Ellmex Construction Co, Inc. v. Republic Insurance Co.,* 202 N.J.Super. 195, 494 A.2d 339 (App.Div.1985); *Kubiak v. Allstate Insurance Co.,* 198 N.J.Super. 115, 486 A.2d 879 (App.Div.1984); *Meier v. New Jersey Life Insurance Co.,* 195 N.J.Super. 478, 480 A.2d 919 (App. Div.1984); *Milcarek v. Nationwide Insurance*

*Co.,* 190 N.J.Super. 358, 463 A.2d 950 (App.Div. 1983). In *Oritani,* the United States District Court of New Jersey agreed that these cases deal only with the issue of punitive damages and not consequential damages. *Oritani* at 1321 n. 13.

**10.** *Garden State Community Hospital v. Watson,* 191 N.J.Super. 225, 465 A.2d 1225 (App.Div. 1982).

**11.** *Carfagno* was decided on August 28, 1991 and *Pickett* was decided on December 17, 1991. The *Pickett* court mades no reference to *Carfagno.*