**Barbara SCHENCK and Samuel Schenck, Plaintiffs,**

v.

**KLOSTER CRUISE LIMITED, Defendant.**

Civ. A. No. 92–28(MTB).

United States District Court, D. New Jersey.

July 28, 1992.

Weiseman Hely by James Hely, Mountainside, N.J., for plaintiffs.

Lilly Sullivan Purcell Barkan & Junge, P.C. by Peter A. Junge, Armand P. Mele, Robert F. Sloan, Bayonne, N.J., for defendant.

BARRY, District Judge.

## I. INTRODUCTION

Defendant Kloster Cruise Limited ("Kloster") has filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56 to dismiss the complaint of plaintiffs Barbara Schenck ("Mrs. Schenck") and Samuel Schenck ("Mr. Schenck"), asserting that the action is barred by the applicable statute of limitations. For the following reasons, this motion will be granted.

## II. BACKGROUND

The facts underlying this action are not complicated and are largely undisputed. Barbara Schenck purchased a cruise ticket to sail on the SS Norway, a ship owned and operated by Kloster, from her travel agent in Plainfield, New Jersey. The cruise sailed on October 27, 1990. Affidavit of Barbara Schenck (hereinafter "Schenck Aff.") ¶ 1. Mrs. Schenck shared a room with her friend, Besse Johnson. *Id.* ¶ 2. On October 30, 1990, while Mrs. Schenck was climbing a ladder to her top bunk, one of the rungs gave way, causing her to fall backwards onto the floor. *Id.* ¶ 3. As a result of the fall, she sustained back injuries and broke her camera. *Id.* Immediately following her fall, she notified the ship's security office, and a report documenting the accident was prepared. *Id.* ¶ 4.

Prior to sailing, Mrs. Schenck was issued a Passenger Ticket Contract dated October 2, 1990. On each of the first four pages of the ticket, the words IMPORTANT NOTICE appear in white bold letters against a red background. *See* Passenger Ticket Contract, Verified Statement of Jane E. Kilgour (hereinafter "Kilgour Statement"), Exh. A. Immediately following these words, the ticket clearly states:

> The passenger's attention is specifically directed to the terms and conditions of this contract appearing on pages 6, 7, 8, 9 and 10. These terms and conditions affect important legal rights and the passenger is advised to read them carefully.

*Id.* The top of page six first informs the passenger that "[a]cceptance of this Passenger Ticket Contract by passenger shall constitute the agreement of the Passenger to these Terms and Conditions." *Id.* The Passenger Ticket Contract contains a contractual limitation period for personal injury actions:

> in no event shall any suit for any cause, including, without limitation, suits brought *in rem* and suits brought *in personam* be maintained against the vessel or the Carrier with respect to any delay, detention, personal injury, illness or death be maintainable, unless suit shall be commenced within one (1) year from the day when the delay, detention, personal injury, illness or death of the passenger occurred, notwithstanding any provision of law of any state or country to the contrary.

*Id.* (emphasis in original).

On December 26, 1990, Mrs. Schenck sent a letter to Kloster informing it of her October 30, 1990 mishap and requesting

reimbursement for the repair of her camera. *See* Kilgour Statement, Exh. E. By way of letter dated January 17, 1991, Kloster stated that it would process the request for reimbursement as long as Mrs. Schenck signed a general release in full and final settlement of her claim. Kilgour Statement, Exh. F. In reply to this letter, counsel for Mrs. Schenck informed Kloster by letter dated January 30, 1991 that Mrs. Schenck would not sign the general release and that she "reserved any rights that she may have as a result of any injuries she suffered" on the cruise. Kilgour Statement, Exh. G. On February 11, 1991, counsel for Mrs. Schenck wrote again to Kloster, requesting incident reports and insurance information. Kilgour Statement, Exh. H.

In February of 1991, Caribbean Marine Associates ("CMA"), a claims adjuster to whom Kloster referred Mrs. Schenck's claim, wrote to counsel for Mrs. Schenck, requesting any medical reports or other information regarding her injuries and allegations of negligence. Verified Statement of D.C. Maillet (hereinafter "Maillet Statement"), Exh. A. In this letter, CMA, as Kloster's agent, clearly advised that all "discussions and negotiations are without prejudice to the rights of either party, and are subject to the terms and conditions of the contract of passage." *Id.* Various medical reports and other information were sent to CMA on August 30, 1991. Maillet Statement, Exh. C.

In its October 7, 1991 correspondence to counsel for Mrs. Schenck, CMA requested further information with which to evaluate the claim, once again clearly indicating that "this request for information, and any correspondence between [the parties], is expressly subject to the rights and defenses of Kloster Cruise Limited, including the terms and conditions set forth in the contract of passage, which manifests the agreement between Barbara Schenck and Kloster." Maillet Statement, Exh. E. On October 23, 1991, counsel for Mrs. Schenck indicated that, in his opinion, CMA had ample information with which to evaluate the claim, stating that "[i]f you don't feel that you have enough, please advise me because we will begin the litigation." Maillet Statement, Exh. G. On December 16, 1991, approximately one year and two months after the date of the accident, Mrs. Schenck filed an action against Kloster in the Superior Court of New Jersey, alleging strict liability, breach of express warranty, and negligence.[1] *See* Complaint, Kilgour Statement, Exh. D.

On January 7, 1992, Kloster removed the action to this court based upon diversity of citizenship, pursuant to 28 U.S.C. § 1332(a)(1), and admiralty and maritime jurisdiction, pursuant to 28 U.S.C. § 1333.

## III. DISCUSSION

As an initial matter, it is well settled that the general maritime law of the United States, and not state law, controls the issue of whether a passenger is bound to terms set forth in a cruise ship's ticket and contract of passage. *See Kendall v. American Hawaii Cruises*, 704 F.Supp. 1010, 1014 (D. Hawaii 1989) (applying general maritime common law to determine validity of the terms of a passenger ticket contract); *McQuillan v. "Italia" Societa per Azione di Navigazione*, 386 F.Supp. 462 (S.D.N.Y.1974) *aff'd* 516 F.2d 896 (2nd Cir. 1975) (the substantive law to be applied is the general maritime law of the United States) (quoting *Jansson v. Swedish American Line*, 185 F.2d 212, 216 (1st Cir.1950)).

### A. Validity of the Time Limitations Period

Congress has permitted shipowners to stipulate, in any contracts for passage, a time limitation for filing suit against the shipowner for personal injury or death, so long as the limitation period is not less than one year. *See* 46 U.S.C.App. § 183b(a).[2]

---

**1.** The complaint is actually brought on behalf of Mrs. Schenck and her husband. Mr. Schenck asserts a claim of loss of consortium. Complaint, Count IV.

**2.** Section 183b(a) provides that:
it shall be unlawful for the manager, agent, master, or owner of any sea-going vessel (other than tugs, barges, fishing vessels and their tenders) transporting passengers or merchan-

Courts have upheld the validity of one-year contractual limitations for personal injury suits against shipowners. The Third Circuit in *Marek v. Marpan Two, Inc.* held that a one-year contractual limitation period for personal injury suits is enforceable as long as the passenger ticket "reasonably communicates" the limitations period to the passenger. 817 F.2d 242, 245 (3d Cir.), *cert. denied*, 484 U.S. 852, 108 S.Ct. 155, 98 L.Ed.2d 110 (1987); *see also Spataro v. Kloster Cruise Limited*, 894 F.2d 44, 45 (2d Cir.1990). Thus, as long as a passenger ticket sufficiently alerts a passenger to the restrictions on his or her rights, a one year contractual limitation will be enforced.[3]

■ In the present case, the Contract of Passage between Kloster and Mrs. Schenck clearly met the statutory provision requiring a limitation period of not less than one year. Similarly, the ticket satisfied the "standard of reasonable communicativeness." *Marek*, 817 F.2d at 245.[4] The first page of the Contract of Passage directs the passenger's attention to those pages containing relevant contractual provisions, including the time limitation currently at issue. Kilgour Statement, Exh. A. The notice was in large type and set off in color from the rest of the page. Moreover, the provisions set forth in the ticket were clear, noticeable, and readily understandable by the average reader. *Spataro*, 894 F.2d at 47. Therefore, the passenger ticket in this case easily satisfies the demands of the Third Circuit's "reasonable communicativeness" standard.[5]

**B. Estoppel**

■ While plaintiffs do not seriously challenge the enforceability of the one year contractual limitation, they do press upon the court the argument that the one-year contractual time limitation was tolled during the parties' period of correspondence between December 1990 and October 1991, alleging that they were "entrapped" by Kloster's "feigned interest in negotiation," and that Kloster's conduct should estop it from asserting a one year limitations period. Pl.Opp. Br. at 6.

This argument is totally without merit. As the court noted in *Kendall v. American Hawaii Cruises*, "courts applying general maritime law to estoppel arguments in the contractual time limitations context implicitly have required an 'intent' element to be satisfied." 704 F.Supp. at 1018 (citing *Scheibel v. Aqwilines, Inc.*, 156 F.2d 636, 639 (2d Cir.1946)). Plaintiffs do not dispute the applicable law as to estoppel, but rather claim that the correspondence between the parties is evidence of Kloster's intent to cause the claim to become time barred. This assertion is simply not borne out by the record. Although Kloster did request information with which to evaluate the claim, it twice explicitly stated that all correspondence between the parties was subject to the terms and defenses contained in the contract. *See* Maillet Statement, Exh. A and E. Even if there were some other indication of intent on the part of Kloster

dise or property from or between ports of the United States and foreign ports to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of, or filing claims for loss of life or bodily injury, than six months, and for the institution of suits on such claims, than one year, such period for institution of suits to be computed from the day when the death or injury occurred. 46 U.S.C.App. § 183b(a).

**3.** Plaintiffs' argument that the contractual language should not be enforced because it is not in compliance with the Plain Language Act, N.J.S.A. 56:12–2, must be rejected. It is clear that "general maritime common law here supersedes all conflicting state law in the court's resolution of the parties contractual dispute." *Kendall v. American Hawaii Cruises*, 704

F.Supp. 1010, 1014 (D.Hawaii 1989). Accordingly, it is the Third Circuit's "reasonable communicativeness" test, not the New Jersey statute, which governs interpretation of the contract's terms.

**4.** Plaintiffs concede that "[i]n some circumstances, similarly styled tickets have been recognized as enforcing ticket time bars." Pl.Opp.Br. at 4.

**5.** Nor could plaintiffs take exception to the terms of the passenger contract merely because they failed to read them. *See Marek*, 817 F.2d at 247; *Strauss v. Norwegian Caribbean Lines, Inc.*, 613 F.Supp. 5, 8 (E.D.Pa.1984); *Mulvihill v. Furness, Withy & Co.*, 136 F.Supp. 201, 207 (S.D.N.Y.1955); *Rogers v. Furness, Withy & Co.*, 103 F.Supp. 314, 317 (W.D.N.Y.1951).

to "lull" plaintiffs, and there is none, these reservations communicated by CMA on behalf of Kloster would rebut such an inference. Summary judgment is proper as a matter of law.[6]

### C. Mr. Schenck's Derivative Claim

■■■ Mr. Schenck has brought a claim for loss of consortium and services, a derivative claim of Mrs. Schenck's claims. Her claims having failed, there is nothing from which his claims can derive and dismissal would be appropriate on that ground alone. Kloster contends, moreover, that the derivative claim is time barred just as the Mrs. Schenck's action is barred and plaintiffs make no argument to the contrary. Kloster is correct. The Fifth Circuit in *Miller v. Lykes Brothers Steamship Co.* held, in the context of maritime personal injury claims, that loss of consortium claims are subject to the same limitations period as the personal injury claims from which they emanate. 467 F.2d 464, 466 (5th Cir.1972). To hold otherwise, the court noted, would run counter to the "plain import" of contractual limitations periods. *Id.* *See also Lieb v. Royal Caribbean Cruise Line, Inc.*, 645 F.Supp. 232, 235 (S.D.N.Y.1986) (concurring with the "common-sense approach" of *Miller*). *Miller* is sound and should be followed. Accordingly, Mr. Schenck's derivative claim of loss of consortium is also time barred.

### IV. CONCLUSION

Because the instant action was filed approximately one year and two months after the cause of action arose, and because the one year contractual limitation is valid and enforceable, the claims of Mrs. Schenck are time barred, as is the derivative claim of her husband. Summary judgment will be granted in favor of Kloster.

---

**6.** Plaintiffs also cite *Peloso v. Hartford Fire Ins. Co.*, 56 N.J. 514, 267 A.2d 498 (1970) in support of the proposition that the one year limitation should be deemed tolled until after Kloster unequivocally denied liability. This case and the federal cases following it cited by plaintiffs are inapposite for at least two reasons. First, as previously stated, the instant action is governed by the general maritime common law. *Williams v. United States,* 711 F.2d 893, 895 (9th Cir.1983). Second, the rule enunciated in *Peloso* applies to contracts between insurance companies and their insureds, not to parties in opposition in a personal injury context. Indeed, the policy reasons behind the New Jersey Supreme Court's decision in *Peloso* amply demonstrate the inapplicability of that doctrine to the facts of this case. The rule in *Peloso* was meant to alleviate the unfair effect of incongruous statutory provisions which would limit the period for an insured to file suit against his or her insurer to one year and at the same time *not enable* an insured to file suit against an insurer for sixty days, effectively reducing the time in which to commence an action from twelve months to ten months. In the instant case, no such inequities operate and, therefore, no such rule is required. Plaintiffs were free to institute an action against Kloster immediately; there was no requirement that they await "denial" of their claim. Accordingly, the insurance tolling cases are inapposite in this context.