**VECTOR-SPRINGFIELD PROPERTIES, LTD., Plaintiff–Appellant,**

v.

**CENTRAL ILLINOIS LIGHT COMPANY, INC., Defendant–Appellee.**

No. 96–3009.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 24, 1997.

Decided March 17, 1997.

Craig H. Zimmerman, Harvey M. Sheldon (argued), McDermott, Will & Emery, Chicago, IL, for plaintiff-appellant.

Michael L. Brody (argued), Susan B. Weiss, Susan L. Winger, Schiff, Hardin & Waite, Chicago, IL, for defendant-appellee.

Before CUMMINGS, EASTERBROOK and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

On July 6, 1994, plaintiff Vector–Springfield Properties, Ltd. ("Vector–Springfield") brought this action against defendant Central Illinois Light Company ("CILCO") alleging three common law causes of action under Illinois law: trespass, nuisance and strict liability for ultrahazardous activity. Vector–Springfield maintains that it has been damaged as a result of contamination discovered on its property in Springfield, Illinois and that such damage was caused by CILCO's predecessor.

On July 11, 1996, the district court issued an order granting CILCO's motion for summary judgment on all three claims. The court concluded that, under the Illinois "discovery rule" applicable to this case, Vector–Springfield's claims accrued for statute of limitations purposes on or around May 9, 1989. Because Vector–Springfield's three claims were effectively filed on May 24, 1994, the court held that the claims were time-barred under the applicable five-year statute of limitations.

Plaintiff appeals the district court's grant of summary judgment in favor of CILCO, and we affirm.

I.

The real property involved in this case, a hotel and a parking lot, is located in downtown Springfield, Illinois. Between 1855 and 1925, CILCO's predecessors operated a coal gas manufacturing plant on property adjacent to the property in question, separated only by an alley which bisects the block. By 1962, visible evidence of the use of that property for the coal gas operations had been removed.

Vector–Springfield bought the property at issue in this case in late 1987 for the purpose of acquiring the hotel on the property, renovating the hotel and selling the property at a profit. Under the terms of the agreement by which it acquired the property, as a condition precedent to its purchase Vector–Springfield was entitled to have an environmental report done on the hotel and parking lot property. To that end, Vector–Springfield conducted an asbestos survey and identified an underground storage tank requiring removal. The reasonableness of the extent of this environmental review was disputed by the parties in the district court. CILCO asserted that Vector–Springfield should have done a more thorough environmental assessment at the time, thereby identifying the contamination from the gas plant earlier. On its part, Vector–Springfield's environmental expert testified that such thorough environmental assessments were not common for properties of this type at that time, although they have since become the norm.

In early 1989, Vector–Springfield entered into discussions with a well known local developer, William Cellini, regarding the possible sale of either the parking lot and hotel parcels or the parking lot parcel alone. In connection with the sale discussions, Cellini's company, New Frontier Development, engaged Hanson Engineers, Inc. ("Hanson") to investigate the environmental status of the property.

On May 8, 1989, Hanson wrote to Cellini, reporting the location of the former gas plant. Hanson noted that "investigations at similar former gas plant sites have revealed contamination of soils and groundwater, in some cases well beyond the site boundaries." As a result, Hanson reported that, "We recommend that a preliminary investigation be conducted to assess whether the area south of the gas plant site [*i.e.*, the parking lot parcel] has been impacted by gas plant

wastes." Cellini forwarded this letter to James King, the president of Vector–Springfield's general partner, on May 9, 1989. King testified during his deposition that this letter was the "first information that [he] had that the property was probably contaminated," although he later clarified that as of the May 9 receipt of Hanson's letter, he did not have "any information beyond what was reflected in the letter concerning contamination of the property."

On May 18, 1989, Hanson reported field observations to Cellini and other New Frontier personnel, stating that its observations were consistent with significant site contamination, suggesting the former gas plant as the source. In a letter dated May 23, 1989 to Cellini, Hanson confirmed this verbal report, noting that: "These contaminants could represent significant environmental impairment to the site. To confirm the identity of the waste products, chemical analyses are being performed at a laboratory on an expedited basis." Unfortunately, neither of the litigants is able to specify at what point Cellini shared these observations with Vector–Springfield, although Cellini "suspected" that this information was shared with Vector–Springfield as it was received and the evidence is uncontested that it was Cellini's practice to "share information with [Vector–Springfield] as he received it from Hanson."

Cellini wrote to King on May 24, 1989, requesting an extension of their contract on the parking lot parcel, writing that he continued to be "very interested in purchasing the parking parcel (and possibly the Lincoln Inn parcel) when the extent and nature of any environmental problems ... have been appropriately resolved."

In a report dated June 1989, Hanson provided to Cellini and New Frontier a recitation of its field observations and subsequent laboratory analysis, noting several facts that pointed to gas plant waste as the source of contamination. Hanson concluded that the site was significantly impaired. The litigants agree that New Frontier forwarded a copy of this report to Vector–Springfield on June 12, 1989. After receiving this Hanson report, Vector–Springfield undertook its own studies of the property, submitting the results to the Illinois Environmental Protection Agency ("IEPA"), which indicated that it would not then require remedial action. However, the property became essentially unmarketable as a result of the contamination and stigma associated with it despite the IEPA's conditional "no action" letter. Vector–Springfield finally sold the property in 1994 for significantly less than it would have received absent the contamination.

## II.

In the district court, both parties agreed that Vector–Springfield's claims were governed by Illinois law and that the five-year statute of limitations provided by 735 Ill. Comp. Stat. Ann. 5/13–205 (West 1996) applied to those claims.[1] The parties also agreed that Illinois' "discovery rule," which postpones the accrual of a plaintiff's cause of action for statute of limitations purposes, applied. The heart of the conflict in this matter is how the "discovery rule" should apply to the facts of this case.

Vector-Springfield argues on appeal that the district court erred in entering summary judgment against it and in favor of CILCO because the court incorrectly concluded that Vector–Springfield's causes of action accrued on May 9, 1989, the date that Hanson's May 8 report was forwarded to King. Vector–Springfield asserts instead that its causes of action accrued in June 1989 when Hanson's field observations and subsequent laboratory analysis were finished and Hanson had concluded that the site was significantly impaired and that, therefore, its claims were filed within the applicable five-year limitations period. Vector–Springfield claims that only then did it learn that it was injured and that the injury may have been wrongfully caused within the meaning of the Illinois "discovery rule" applicable to its causes of action.[2]

1. Section 13–205 provides that "actions ... to recover damages for an injury done to property, real or personal ... shall be commenced within 5 years next after the cause of action accrued."

2. Vector-Springfield also maintains that the district court correctly concluded that genuine issues of material fact precluded summary judgment as to CILCO's second statute of limitations

We review a district court order granting summary judgment de novo. See Ortiz v. John O. Butler Co., 94 F.3d 1121, 1124 (7th Cir.1996), certiorari denied, —— U.S. ——, 117 S.Ct. 957, 136 L.Ed.2d 843; Sweat v. Peabody Coal Co., 94 F.3d 301, 304 (7th Cir.1996). Summary judgment is appropriate when the record, viewed in a light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Once a motion has been filed for summary judgment, the burden shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the non-movant bears the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265. The mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202. In this case, the parties appear to agree on virtually all of the material facts, but they disagree on the inferences to be drawn therefrom.

Under the Illinois "discovery rule," the statute of limitations on Vector–Springfield's claims began to run when Vector–Springfield became possessed of sufficient information concerning its injury to put a reasonable person on inquiry to determine whether actionable conduct was involved. See Jackson Jordan, Inc. v. Leydig, Voit & Mayer, 158 Ill.2d 240, 198 Ill.Dec. 786, 789–790, 633 N.E.2d 627, 630–631 (1994); Knox College v. Celotex Corp., 88 Ill.2d 407, 58 Ill.Dec. 725, 729–730, 430 N.E.2d 976, 980–981 (1981); Abramson v. Abramson, 772 F.Supp. 395, 397–398 (N.D.Ill.1991), affirmed, 991 F.2d 799 (7th Cir.1993). "[T]he statute starts to run when a person knows or reasonably should know of his injury and also

knows or reasonably should know that it was wrongfully caused." Knox College, 58 Ill. Dec. at 729, 430 N.E.2d at 980. CILCO must show "1) that [Vector–Springfield] knew or should have known of an injury to their property ... and 2) that the contamination resulted from another's conduct." G.J. Leasing Co., Inc. v. Union Electric Co., 825 F.Supp. 1363, 1369 (S.D.Ill.1993), vacated in part on unrelated grounds, 839 F.Supp. 21. This Court therefore must determine whether a genuine issue of material fact exists regarding "the date upon which the plaintiff[ ] obtained this knowledge or should have obtained this knowledge and therefore [was] under an obligation to inquire further to determine whether an actionable wrong was committed." Id.

Like the district court, we find the Illinois Supreme Court's decision in Hermitage Corp. v. Contractors Adjustment Co., 166 Ill.2d 72, 209 Ill.Dec. 684, 651 N.E.2d 1132 (1995), instructive. As with the plaintiffs in Hermitage, Vector–Springfield is not really disputing that it was "aware of the possibility that they had been wrongfully injured" as of May 9, 1989. Id., 209 Ill.Dec. at 690, 651 N.E.2d at 1138. Even though Vector–Springfield argues that it could not be sure that it was injured until May 24, the Illinois Supreme Court pointed out in Hermitage that " '[a]t some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved.' " Id., 209 Ill.Dec. at 691, 651 N.E.2d at 1139 (quoting Knox College, 88 Ill.2d 407, 58 Ill. Dec. at 729–730, 430 N.E.2d at 980–981).

This Court believes that threshold has been passed here. The May 8 Hanson letter disclosed that the northern half of the block on which the parking lot parcel was located had been the site of a gas plant and that waste products from such facilities often af-

argument, viz., that Vector–Springfield should have found out about the contamination in 1987 when it bought the property and was entitled to have an environmental report done as a condition to its purchase. Finally, it argues that genuine issues of material fact also preclude summary judgment based on caveat emptor arguments as to its trespass and nuisance claims and that the

Illinois Moorman doctrine does not bar its strict liability claim (both arguments were asserted by CILCO as alternative bases for summary judgment). Because we agree with the district court that summary judgment was appropriate on statute of limitations grounds based on Hanson's May 8 report, it is unnecessary to address these arguments.

fected property "well beyond the site boundaries," and the letter also recommended further investigation. Both parties agree that Vector–Springfield's president, King, received this letter on May 9, 1989. More dispositive is the fact that King testified that the inference Vector–Springfield drew from this letter was "that the property was probably contaminated." We believe that the only reasonable inference to be drawn from these undisputed facts—and in fact the *actual* inference drawn by Vector–Springfield—is that a reasonable person, possessed of such a letter, would be put on notice of its injury and that it should determine whether legally actionable conduct was involved, within the meaning of *Hermitage*.[3] Regardless of Vector–Springfield's protestations to the contrary, King's later testimony that he had no information beyond that contained in the Hanson letter neither creates a material factual dispute nor affects our conclusion that May 8, 1989 was "the date upon which the plaintiff[ ] obtained this knowledge or should have obtained this knowledge and therefore [was] under an obligation to inquire further to determine whether an actionable wrong was committed." *G.J. Leasing Co.*, 825 F.Supp. at 1369.[4]

Accordingly, we agree with the district court that the statute of limitations on Vector–Springfield's claims began to run on May 9, 1989, when it received Hanson's letter. Consequently, the filing of its complaint effective May 24, 1994, occurred subsequent to the expiration of the applicable five-year statute of limitations and its claims were properly disposed of on summary judgment.

### III.

For the reasons discussed above, the decision of the district court is AFFIRMED.

---

3. This Court disagrees with Vector–Springfield's repeated blanket assertion that under Illinois law the statute of limitations does not begin to run until the plaintiff *knows* of some injury. Rather, the test, as clearly set forth by the Illinois Supreme Court, is whether a "person knows *or reasonably should know* of his injury and also knows or reasonably should know that it was wrongfully caused." *Knox College*, 58 Ill.Dec. at 728, 430 N.E.2d at 980 (emphasis added). Similarly, the Illinois Supreme Court in *Hermitage*, 209 Ill.Dec. at 690–691, 651 N.E.2d at 1138–1139, rejected the plaintiffs' argument that the statute of limitations could not begin to run until the plaintiffs were certain that they had been injured, holding that knowledge of *possible* injury was sufficient to trigger the limitations period.

4. We agree with plaintiff's assertion that the point in time when a reasonable person with similar information should have realized he had been injured and that the injury had been wrongfully caused is generally a question to be decided by the trier of fact. *See Knox College*, 58 Ill.Dec. at 730, 430 N.E.2d at 981. But, "if the facts are undisputed and only one conclusion may be drawn from them, summary judgment will be an appropriate disposition." *Golla v. General Motors Corp.*, 261 Ill.App.3d 143, 198 Ill.Dec. 731, 735, 633 N.E.2d 193, 197 (1994), *affirmed*, 167 Ill.2d 353, 212 Ill.Dec. 549, 657 N.E.2d 894 (1995); *see also Jackson Jordan*, 198 Ill.Dec. at 790, 633 N.E.2d at 631. As noted above, this is such a case, where Vector–Springfield's principal has acknowledged that following the May 8 letter Vector–Springfield was aware *in fact* of the probable injury and that it was caused by the former gas plant.