Kwesi **GAHNNEY** and Mangowa **Gahnney, Plaintiffs,**

v.

**STATE FARM INSURANCE CO.,** John Doe, and ABC Corp., **Defendants.**

**No. CIV. A. 98–4659(JEI).**

United States District Court, D. New Jersey.

July 27, 1999.

Law Offices of Ronald DeSimone, P.C., Mt. Laurel, NJ, for Plaintiffs.

Jamieson, Moore, Peskin & Spicer by Thomas P. Weidner and David F. Swerdlow, Princeton, NJ, for Defendants.

## OPINION

IRENAS, District Judge.

Kwesi and Mangowa Gahnney ("plaintiffs") entered into a homeowners insurance contract with the defendant State Farm Insurance Company ("State Farm") on August 27, 1995. The plaintiffs allege that State Farm failed to honor the terms of the insurance contract when it refused to reimburse the plaintiffs for the full amount of the damages caused to the their residence as a result of snow and ice from a 1996 winter storm. Before this Court is State Farm's motion for summary judgement, pursuant to Federal Rules of Civil Procedure 56(c). For the reasons set forth below, State Farm's motion for summary judgement is granted.

## I. FACTS AND PROCEDURE

The plaintiffs are the owners and residents of 81 Bunning Drive in Voorhees, New Jersey. On August 27, 1995, defendant State Farm issued the plaintiffs an insurance policy, # 30–BB–0283–4, which covers, *inter alia,* water damage to the plaintiffs' Voorhees residence.[1] The policy expired on August 27, 1996. During the winter of 1995–96, the heavy weight of the ice and snowfall caused damages to the plaintiffs' premises.

In January of 1996, the plaintiffs began to notice the damaging effects of the storm when water began leaking through their skylight, the windows of the master bed-

---

1. The plaintiffs' State Farm homeowner's policy covers, in pertinent part, the 1) dwelling up to $250,400; and 2) dwelling extensions up to $25,040. The plaintiffs deductible is $250.

room, the French doors and the family room. In May of 1996, the plaintiffs realized the full extent of the water damages when the snow completely melted. It was not until July of 1996, that the plaintiffs contend that they realized the full extent of the soot damages.

Plaintiffs claim that the full extent of the general damages include: roof repair, gutter, facet board behind gutter, front porch roof, siding repairs, water damages (living room, foyer, office, family room, master bedroom, master bathroom), and soot damages (living room, foyer, dining room, downstairs hall, office, family room, upstairs hall, kitchen, master bedroom, master bathroom, and all three remaining bedrooms).

On July 16, 1996, the plaintiffs hired Messers Remmey ("Remmey") of Remmey Adjustment Company to advise and assist in the adjustment of the plaintiffs' claim. The plaintiffs assert that they gave State Farm notice of their claim on the same day when Remmey allegedly faxed the plaintiffs' claim request to State Farm representative Carl Hafer ("Agent Hafer"). State Farm disagrees and alleges that the plaintiffs did not report the damages until September 30, 1996.

On October 9, 1996, Agent Hafer and Remmey inspected the plaintiffs' home. As a result of the inspection, State Farm offered the plaintiffs a total replacement cost of $3,270 and an actual cash value of $2,686.[2] According to State Farm, Remmey told the plaintiffs that the damage estimate was fair and that they should accept the offer. On February 10, 1997, the plaintiffs ended their relationship with Remmey on the grounds that he failed to do his job adequately and failed to conduct

an independent estimate of the damages to their home.

On March 11, 1997, the plaintiffs submitted to State Farm a damage estimate calculated by Mark Woodruff ("Woodruff") of Metro Public Adjusters, Inc. ("Metro"). Woodruff estimated the damages to the plaintiffs' home at $23,906.72. Plaintiffs allege that following the Woodruff estimate, on March 20, 1997, Agent Hafer increased the amount of his damage estimate. However, the actual amount of the new estimate is unknown because Agent Hafer was fired before the plaintiffs received notice of the new award. The plaintiffs' claim was then assigned to Mr. Garcia ("Agent Garcia") of State Farm.

On or about April 11, 1997, the plaintiffs requested an appraisal.[3] However, State Farm requested a chance to re-inspect the premises before resorting to an appraisal. On May 13, 1997, State Farm's Agent Garcia and Kevin Rogers met with Mrs. Gahnney and Woodruff to re-inspect the damages. State Farm did not increase its offer, choosing instead to maintain the initial estimate of a total replacement cost of $3,270 and an actual cash value of $2,686. Unsatisfied with the outcome, the plaintiffs and State Farm commenced the independent appraisal.

G. Michael Murphy and Alan Burke were the independent appraisers appointed by State Farm and the plaintiffs, respectively. On August 5, 1997, the independent appraisers agreed to a total replacement cost of $4,716.22 and an actual cash value of $3,984.68. On August 27, 1997, State Farm sent a check to the plaintiffs in the amount of the $3,984.68. The plaintiffs contend that the appraisal award became known to them on September 4, 1997, when it was forwarded by Metro. The

---

2. The actual cash value is paid up front to the insured, regardless of whether or not the repairs are made. Upon proving to State Farm that the actual repairs were made, the insured would then be entitled to the full replacement cost.

3. An "appraisal" means that State Farm and the insured each choose an independent appraiser and then the two independent appraisers choose an umpire. The appraisers inspect the damages of the insured person's home and collectively calculate a cost estimate. If the appraisers agree to an estimate, then that shall be the amount of the loss.

plaintiffs did not cash the check because it was significantly less than Metro's estimate of $23,906.72.

On August 7, 1998, the plaintiffs filed a complaint in the Superior Court of New Jersey and on October 9, 1998, State Farm filed a notice of removal, pursuant to 28 U.S.C. §§ 1446, 1441, and 1332. On May 13, 1999, State Farm filed the instant motion for summary judgment pursuant to Fed.R.Civ.P. 56(c).

## II. STANDARD

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(quoting Fed.R.Civ.P. 56(c)). Although the moving party bears the initial burden of informing the district court of the basis for its motion, there is no requirement that the moving party support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 106 S.Ct. 2548. The nonmoving party may not simply rest on its pleadings to oppose a summary judgment motion, but must affirmatively come forward with admissible specific evidence establishing a genuine issue of fact. *See id.* at 324, 106 S.Ct. 2548. Where the moving party has carried its initial burden of demonstrating the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Idus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the nonmoving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir.1986). The role of the court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Idus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotations omitted); *see also J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring).

## III. DISCUSSION

State Farm asserts three independent grounds for summary judgment: 1) plaintiffs filed the suit after the one-year period required by the insurance policy; 2) plaintiffs are bound by the appraisal award and have failed to demonstrate any impropriety with respect to this award; and 3) the fraud, consumer fraud and punitive claims should be dismissed as a matter of law.

This Court must first determine whether the plaintiffs are barred from filing a suit against State Farm due to the expiration of the one-year statute of limitations outlined in the homeowners insurance policy. The plaintiffs' homeowners policy is modeled after New Jersey fire insurance statute, N.J.S.A. 17:36–5.20 [4], and reads, in pertinent part, as follows: "[t]he action

---

**4.** "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within *twelve months next after inception of the loss.*"(emphasis added).

must be started within *one year after the date of loss or damage.*"(emphasis added).

This Court finds that there is no genuine issue as to the plaintiffs' failure to file suit against State Farm within the one-year statute of limitations. Therefore, the plaintiffs are barred from bringing any claim in connection with the 1996 winter storm against State Farm.

### A

State Farm argues that the plaintiffs' complaint should be dismissed because the plaintiffs failed to file suit within one year of the damages as required by the insurance policy. Plaintiffs argue that they filed the suit within the relevant period of limitations because according to New Jersey law, the negotiation period tolls the statute of limitations. State Farm argues that even if the relevant period is tolled, the plaintiffs still failed to file within the relevant statute of limitations.

### 1

■ In New Jersey, the general rule is that the statute of limitations applicable to contracts also governs insurance actions as well. *Breen v. New Jersey Mfrs. Indemn. Ins. Co.*, 105 N.J.Super. 302, 309, 252 A.2d 49, (Law Div.1969), *aff'd,* 109 N.J.Super. 473, 263 A.2d 802 (App.Div.1970). N.J.S.A. 2A:14–1, states, in pertinent part, as follows: "recovery upon a contractual claim or liability, shall be commenced within 6 years next after the cause of any such action shall have accrued." Therefore, "[a]bsent a provision in the insurance policy or an express statute to the contrary, the statute of limitations applicable to a suit on a policy of insurance" is six years. *Crest–Foam Corp. v. Aetna Ins. Co.*, 320 N.J.Super. 509, 517, 727 A.2d 1030, 1034 (Law Div.1999); *Walkowitz v. Royal Globe Ins. Co.*, 149 N.J.Super. 442, 448, 374 A.2d 40, 43 (App.Div.1977)(holding that absent a provision in the insurance policy or an express statute to the contrary, the six-year statute of limitations is applicable to a suit on a policy of insurance), *cert. dismissed,* 75 N.J. 584, 384 A.2d 815 (1977).

■ However, this period may be shortened by the parties. In *James v. Federal Ins. Co.*, the Supreme Court of New Jersey noted that "[t]he law will not make a better contract for parties than they themselves have seen fit to enter into, or alter it for the benefit of one party and to the detriment of the other. The judicial function of a court of law is to enforce a contract as it is written." 5 N.J. 21, 24, 73 A.2d 720, 721 (1950)(quoting *Kupfersmith v. Delaware Ins. Co.*, 84 N.J.L. 271, 275, 86 A. 399, 401 (E. & A.1913)).

In the present case, there is a clause which unambiguously states that the statute of limitations is one year. The clause reads as follows: "[t]he action must be started within *one year after the date of loss or damage.*"(emphasis added). Therefore, for the purposes of this motion, the applicable period for the statute of limitations is one year.

This Court must next determine whether the statute of limitations begins to run on the date of the incident giving rise to the damages or the date that the cause of action originated. The New Jersey discovery rule provides that, in an appropriate case, a cause of action will not accrue until the injured party "discovers, or by exercise of reasonable diligence and intelligence should have discovered, facts which form the basis of a claim." *Keil v. National Westminster Bank, Inc.*, 311 N.J.Super. 473, 710 A.2d 563 (App.Div.1998); *Haardt v. Farmer's Mutual Fire Insurance* Co., 796 F.Supp. 804, 807 (D.N.J.1992)(quoting *O'Keeffe v. Snyder,* 83 N.J. 478, 491, 416 A.2d 862 (1980)); *see also Ali, Inc. v. Generali,* 954 F.Supp. 118, 122 (D.N.J. 1997).

■ However, this is not an "appropriate case." The controlling law on this issue was set out in *Peloso v. Hartford Fire Insurance Co.*, 56 N.J. 514, 521, 267 A.2d 498 (1970), in which the New Jersey Supreme Court held that "the statute of

limitations is to run from the *date of the casualty,* but to toll it from the time the insured gives notice until liability is formally declined." (emphasis added). In *Peloso,* the plaintiff had filed a suit eighteen months after the date of the casualty and three months after the period of limitations. *Id.* at 518, 267 A.2d 498. The issue before the court was whether the statute of limitations began on the date of the casualty or at the time the cause of action accrues. *Id.* at 519, 267 A.2d 498. The Court decided that a fair resolution would be for the statute of limitations to begin running from the "date of the casualty," which means the actual date of the incident, but to toll the period between notification and the receipt of a final offer. *See id.* at 519, 267 A.2d 498; *see also Sager Glove Corp. v. Aetna Ins. Co.,* 317 F.2d 439, 441 (7th Cir.)(holding that the loss occurs at its "inception" whether or not the insured knows of it), *cert. denied,* 375 U.S. 921, 84 S.Ct. 266, 11 L.Ed.2d 165 (1963); *Wolf v. Home Ins. Co.,* 100 N.J.Super. 27, 241 A.2d 28 (Law Div.1968), *aff'd,* 103 N.J.Super. 357, 247 A.2d 345 (App.Div. 1968). In the present case, the parties concede that the date of the casualty is January 8, 1996. (*See* Plaintiffs' Affidavit Exhibit C and Certification of Nicholas Bongiovanni Exhibit 1). Thus, the statute of limitations began to run on January 8, 1996.

### 2

According to *Peloso,* the statute of limitations begins to run on the date of the casualty, however it is tolled from the *time the insured gives notice* until the *time the insurer declines liability.* 56 N.J. at 521, 267 A.2d 498 (emphasis added). In the instant case, State Farm alleges that the plaintiffs did not give notice until September 30, 1996, whereas plaintiffs allege that they gave State Farm notice on July 16, 1996. The parties also dispute the date of the final offer. State Farm maintains that it sent a final settlement check to the plaintiffs on August 27, 1997, however, the plaintiffs claim they received the check on

September 4, 1997. The plaintiffs filed the instant claim on August 8, 1998.

Viewing the facts in a light most favorable to the plaintiffs, this Court will use the plaintiff's notification date of July 16, 1996 and the date that they received the final offer on September 4, 1997. Using these dates, by the plaintiffs own admission they waited 189 days from the date of the casualty to notify State Farm. Thereafter, the parties negotiated for approximately fourteen months. The statute of limitations did not begin again until September 4, 1997, when plaintiffs received State Farm's final offer. As a result, the plaintiffs had 176 days to file a complaint and instead waited 338 days to file the complaint, 162 days past due. Therefore, the plaintiffs failed to file suit within the one year statute of limitations.

### 3

■ The plaintiffs argue that the statute of limitations should not begin to run until they discovered the extent of the damages from the winter storm in the spring. The plaintiffs rely on the New Jersey Discovery Rule. The New Jersey discovery rule provides that, in an appropriate case, a cause of action will not accrue until the injured party "discovers, or by exercise of reasonable diligence and intelligence should have discovered, facts which form the basis of a claim." *Keil v. National Westminster Bank, Inc.,* 311 N.J.Super. 473, 710 A.2d 563 (App.Div. 1998); *Haardt v. Farmer's Mutual Fire Insurance Co.,* 796 F.Supp. 804, 807 (D.N.J.1992)(quoting *O'Keeffe v. Snyder,* 83 N.J. 478, 491, 416 A.2d 862 (1980)); *see also Ali, Inc. v. Generali,* 954 F.Supp. 118, 122 (D.N.J.1997).

Even under the Discovery Rule, the statute began to run in January 1996 when the plaintiffs first discovered damages which, at the minimum, should have led them to discover the true extent of their loss. Kwesi Gahnney stated that he and his wife began noticing leaks around the

skylight, around the master bedroom windows, in the family room and around the French doors in January of 1996. (*See* Certification of David Swerdlow at 21). In the plaintiffs' brief, they assert that they first noticed water damages in May of 1996 and soot damages in July of 1996. However, the plaintiffs' statements establish that they were on notice of the damages in January 1996 and not in July 1996 as they now claim.

Therefore, according to the plaintiffs, they noticed damages in several of the rooms in January of 1996. Since plaintiffs are unclear as to the exact day they noticed the damages in January, this Court will infer, in a light most favorable to plaintiffs, that they discovered the damages on January 31, 1996. The plaintiffs waited 166 days from the day of they discovered the damages to notify State Farm. Thereafter, the parties negotiated for approximately fourteen months. The statute of limitations did not begin again until September 4, 1997 when State Farm's final offer was received. As a result, the plaintiffs had 199 days to file a complaint, but instead waited 338 days to file the complaint, 139 days past due.

### B

■ Plaintiffs argue that because State Farm failed to provide them with notice of the statute of limitations, State Farm should be precluded from asserting the statute of limitations defense. However, according to State Farm, the plaintiffs were sent a copy of their policy around January of 1996.

■ The insured party is entitled to look to her policy for notice of a statute of limitations on his right to recover. *Fredericks v. Farmers Rel. Ins. Co. of N.J.*, 80 N.J.Super. 599, 605, 194 A.2d 497, 500 (App.Div.1963). The Appellate Division stated that when the Legislature passed the one-year limitation for fire insurance, the "intent was that the insured may be apprized of all his rights, including that limitations upon them, by reading the poli-

cy." *Id.* The insured's ignorance of the policy limitations, allegedly attributable to an unjustifiable withholding of information concerning the policy, precludes the insurer from asserting such a defense. *Id.* However, the rule may be otherwise if the insured should have known of the limitations period provided in the policy. *Id.*

State Farm asserts that a copy of the policy was issued to plaintiffs around the time of their loss. On April 11, 1997, the plaintiffs requested an appraisal as defined in their policy. The paragraph explaining that they had a right to an appraisal is located only one short section away from the "Suit Against Us" provision. The "Suit Against Us" provision is legible, clear and concise. This section reads as follows, "[n]o action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage." The one-year statute of limitations is written clearly on the fourteenth page of their homeowner's policy.

Further, there is no evidence indicating that State Farm unjustifiably withheld information about the statute of limitations. Therefore, as plaintiffs have not come forward with any evidence establishing a genuine issue of fact regarding their lack of notice, this Court concludes that plaintiffs had adequate notice of the one-year statute of limitations.

### C

The plaintiffs also argue that State Farm is not entitled to the statute of limitations defense because State Farm failed to pay the amount of their admitted liability, which constitutes a breach of contract.

■ "The statute of limitations should not be a shield against legitimate claims when equity requires otherwise or that an estoppel should be invoked." *Fernandi v. Strully*, 35 N.J. 434, 173 A.2d 277 (1961); *see also Friedman v. Friendly Ice Cream Co. V Fruit Crown Products Corp. v. Mag-*

*nus,* 133 N.J.Super. 333, 337, 336 A.2d 493, 495 (App.Div.1975); *Kyle v. Green Acres,* 44 N.J. 100, 207 A.2d 513(1965). The failure of an insurance company to make the payment of the amount to which it admitted liability precludes the insurance company from raising the statute of limitations as a defense. *Warren v. Employers' Fire Insurance Co., Boston, Massachusetts,* 53 N.J. 308, 311, 250 A.2d 578, 580 (1969).

However, State Farm is not unwilling to pay its admitted liability. Liability in this case was never declined. Rather the parties disagreed on the settlement amount. The plaintiffs agreed to a binding appraisal. As stated in plaintiffs' policy, if the appraisers are in agreement, "[they] shall set the amount of the loss." Therefore, State Farm met their obligation to plaintiffs on September 4, 1997 when the appraisal award was received by plaintiffs.

### IV.  CONCLUSION

For the foregoing reasons, State Farm's motion for summary judgement, pursuant to Fed.R.Civ.P. 56(c) is granted. An appropriate order will issue on even date herewith.