**NEW WEST URBAN RENEWAL CO., a New Jersey Limited Partnership, Plaintiff,**

**v.**

**VIACOM, INC. (successor by merger to CBS Corporation, formerly known as Westinghouse Electric Corporation), John Does 1–50, and ABC Companies 1–50, Defendants.**

Civil Action No. 01–707.

United States District Court, D. New Jersey.

Nov. 18, 2002.

Howard P. Davis, Esq., The Law Offices of Howard P. Davis, Esq., Englewood Cliffs, NJ, Marisa Y. Paradiso, Esq., The Law Offices of Marisa Y. Paradiso, Riverdale, NJ, for Plaintiff, New West Urban Renewal Co.

James Stewart, Esq., Lowenstein Sandler, P.C., Roseland, NJ, Mark D. Shepherd, Esq., Lisa G. Silverman, Esq., Babst, Calland, Clements and Zomnir, P.C., Pittsburgh, PA, for Defendant, Viacom, Inc.

OPINION

ORLOFSKY, District Judge.

## I. INTRODUCTION

The law does not protect those who sleep on their rights. Here, Plaintiff, New West Urban Renewal Co. ("New West"), waited for at least seven years, and perhaps longer, before it sought damages for the environmental contamination of property that it purchased from Westinghouse, Inc. ("Westinghouse"), the predecessor-in-interest to the Defendant, Viacom, Inc. ("Viacom").[1] Viacom now moves for partial summary judgment on all but the First and Fifth[2] Counts of the Complaint based on the expiration of the statute of limitations. Whether these claims are time-barred depends on the applicability of New Jersey's "discovery rule," an equitable tolling doctrine. For the reasons discussed below, I find that the discovery rule does not toll New West's environmental contamination claims, which are barred by the six-year statute of limitations. Accordingly, Viacom's motion for partial summary judgment shall be granted.

## II. FACTS AND PROCEDURAL HISTORY

The parties in this action are no strangers to litigation. In fact, New West and Westinghouse litigated the same property dispute in 1995, and Judge Walls, my esteemed colleague, issued an opinion deciding the parties' cross-motions for partial summary judgment, reported at *New West Urban Renewal Co. v. Westinghouse Elec. Corp.*, 909 F.Supp. 219 (D.N.J.1995) (hereafter, "New West I"). Although New West I summarizes the facts at issue in this case, I will briefly review them here.

On December 29, 1983, Westinghouse sold New West property located at "Orange and High Streets, more particularly referred to as Block 47 Lot 40." Certif. of Marisa Y. Paradiso, Esq. in Opp'n to Summ. J., 9/11/02 ("Paradiso Certif."), Ex. 3. Westinghouse had used the property since the 1880's as a manufacturing facility. *New West I*, 909 F.Supp. at 221. After New West received title to the property, Westinghouse continued its occupancy for one year under the lease agreement. *Id.* During its lengthy occupancy of the property, Westinghouse had utilized various hazardous substances that were discharged and released into the soil and buildings at the property. *Id.* Westinghouse also kept hazardous materials in its underground storage tanks, which were released into the surrounding soil and buildings. *Id.*

On October 16, 1987, New West entered into an option contract with Newark Ventures, Inc. ("Newark Ventures") to purchase the Orange Street property. *See*

---

1. *See* Certif. of Lisa G. Silverman in Supp. of Def. Viacom's Mot. for Partial Summ. J., 6/6/02 ("Silverman Certif."), Ex. 2 at pp. 1–2.

2. Viacom withdrew its request for partial summary judgment on Count Five. *See* Reply Br. in Further Supp. of Mot. for Partial Summ. J. at pp. 2–3.

Certif. of Lisa G. Silverman ("Silverman Certif."), 6/6/02, Ex. 8. This contract was never executed because Newark Ventures cancelled the contract by letter dated December 15, 1987. *See id.,* Ex. 16. This cancellation was based on reports issued in 1987 by Accutech Environmental Services, Inc. ("Accutech") and PMK Engineering & Testing, Inc. ("PMK"), which "identif[ied] six areas of environmental concern," *id.,* and gave certain minimum estimates for the cost of clean-up that approached $500,000. *See id.; see also* Exs. 12–14.

In 1992, New West conducted a preliminary environmental investigation of the property to evaluate potential development options. *See New West I,* 909 F.Supp. at 222. This investigation revealed the presence of unlawful environmental contaminants, such as PCB's, or polychlorinated biphenyls. *See id.* New West sent two demand letters to Westinghouse to provide indemnification for the costs to monitor, assess, evaluate and clean up the environmental contamination at the Property. *Id.* Westinghouse refused to do so. *Id.*

New West filed its original Complaint on March 9, 1994, and both parties moved for partial summary judgment. Judge Walls granted each party's motions as follows: (1) the Court rejected Westinghouse's argument that, under the "as is" clause of the contract of sale, New West had assumed liability for remedying the environmental contamination of the purchased property, *New West I,* 909 F.Supp. at 224; (2) although New Jersey's Environmental Cleanup Responsibility Act ("ECRA"), N.J.S.A. §§ 13:1K–6, *et seq.,* became effective as of December 31, 1983, after the closing date of the sale, Westinghouse was still liable because it continued to operate the property after the ECRA's effective date, *see New West I* at 227; and (3) the Court found that New West's ECRA claim against Westinghouse was time-barred under the six-year statute of limitations, *see id.* at 228.[3]

The parties entered into a Partial Settlement and Stay Agreement in 1996, and the action was administratively terminated without prejudice by Court Order dated March 11, 1996. *See* Silverman Certif., Exs. 2 and 19. Unable to reach an agreement, New West notified the Court in writing on September 1, 2000 that it was terminating the stay. *See* Ex. 2, at p. 2. The parties then entered into a Tolling Agreement, in which the parties agreed to dismiss all outstanding claims and counterclaims in the old case, Civ. A. No. 94–1033, and commence a new action by filing a new Complaint and obtaining a new docket number. *See* Silverman Certif., Ex. 2, ¶¶ 1–2. The Tolling Agreement also provided "that any and all applicable statute of limitations or other time bars (such as laches or the like) relevant to any claims they previously asserted … are … tolled for the period from the date the previous action was commenced (March 9, 1994) to the date when the new action is commenced." *Id.* ¶ 5.

In its successive Complaint commencing the present action, Civil Action No. 01–707, New West alleges that: (1) Viacom is liable for costs under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601, *et seq.;* (2) Viacom individuals are liable under CERCLA; (3) New West is entitled to indemnification under

---

**3.** The "Tolling and Status Quo Agreement Between New West Urban Renewal Co. Ltd. and Viacom, Inc." provides that "any and all Decisions, Orders, and Opinions issued or entered by the Court in the previous action (Civil Action 94–1033) shall constitute the law of the case and shall be treated as if they were issued in the new action." Silverman Certif., Ex. 2, at p. 4. Because Judge Walls already dismissed the ECRA claim against Westinghouse as time-barred under the six-year statute of limitations, *see New West I,* 909 F.Supp. at 228, this Court shall likewise dismiss the Fourth Count of New West's Complaint.

Viacom's operators' insurance policies; (4) Viacom is liable under the New Jersey ECRA, *see* Note 3, *supra;* (5) Viacom is liable under the New Jersey Spill Compensation and Control Act, N.J.S.A §§ 58:10–23.11, *et seq.;* (6) Viacom is subject to strict liability; (7) Viacom acted negligently; (8) Viacom is liable for fraudulent nondisclosure based on Westinghouse's knowledge of environmental problems with the property; and (9) Viacom breached the covenant of good faith and fair dealing. *See* Complaint ¶¶ 21–77. At this time, New West has agreed to dismiss Counts Two and Three[4] of the Complaint. *See* Br. in Opp'n to Mot. for Partial Summ. J., at pp. 35–36. Viacom seeks partial summary judgment on Count Three and Counts Six through Nine of the Complaint.[5]

This Court has jurisdiction over the federal claims in this action under 28 U.S.C. § 1331 (2002) and over the supplemental state law claims under 28 U.S.C. § 1367. I have considered the submissions of the parties and decided this motion on the papers without oral argument pursuant to Fed.R.Civ.P. 78 (2002). For the reasons set forth below, Defendants' Motion for Partial Summary Judgment shall be granted.

## III. STANDARD FOR SUMMARY JUDGMENT

The legal standard governing summary judgment is well-settled. Summary judgment is proper only "if the pleadings, de-

positions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (West 2002); *see also Anderson v. Consol. Rail Corp. ("Conrail")*, 297 F.3d 242, 247 (3d Cir.2002). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Conrail*, 297 F.3d at 247 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A fact is material if it bears on an essential element of the plaintiff's claim. *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir.1999) (*citing Anderson*, 477 U.S. at 248–251, 106 S.Ct. 2505). Thus, to survive a motion for summary judgment, the party contesting the motion must demonstrate a dispute over facts that might affect the outcome of the suit. *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (*citing Anderson*, 477 U.S. at 250–52, 106 S.Ct. 2505).

When considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. In evaluating the evidence, the court must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir.2002)

---

**4.** New West "made a business decision" to dismiss with prejudice Count Two, alleging individual liability under CERCLA, *see* New West Br. in Opp'n at pp. 34–35, but it has only agreed to dismiss Count Three, alleging a right to indemnification under Viacom's operators' insurance policies, without prejudice. *See id.* at p. 36. Viacom will not consent to the dismissal of Count Three without prejudice and argues that New West is barred from so doing under Fed.R.Civ.P. 41(a)(1). Rule 41(a), however, is not applicable here because

that rule applies to dismissals of entire actions and not to individual claims. *See Smith, Kline & French Labs. v. A.H. Robins Co.*, 61 F.R.D. 24, 28–29 (E.D.Pa.1973); *see also* 8 James Wm. Moore, et al., *Moore's Federal Practice* § 42.21[1] (3d ed.2002). I shall dismiss Count Two of the Complaint with prejudice, per the parties' stipulation, and I shall address Count Three separately herein.

**5.** *See* Note 2, *supra.*

(quoting *Bartnicki v. Vopper*, 200 F.3d 109, 114 (3d Cir.1999)); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Notwithstanding this deference towards the non-movant, "[t]he mere existence of a scintilla of evidence in support of the [movant]'s position will be insufficient" to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Summary judgment is proper "if after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Conrail*, 297 F.3d at 247 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

After one party has filed a properly supported summary judgment motion, the party opposing it must present sufficient evidence for a reasonable jury to find in its favor. *Groman*, 47 F.3d at 633 (*citing Anderson*, 477 U.S. at 250–52, 106 S.Ct. 2505). Moreover, "[w]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).[6] "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." *Id.*

---

6. Local Civil Rule 56.1 of this Court also requires that, on motions for summary judgment, each side must submit statements identifying material facts as to which there does or does not exist a genuine issue. *See id.* (Gann 2002). "[F]acts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted." *Hill v. Algor*, 85 F.Supp.2d 391, 408 n. 26 (D.N.J.2000).

## IV. STATUTES OF LIMITATIONS AND THE NEW JERSEY "DISCOVERY RULE"

Viacom seeks summary judgment on Count Three and Counts Six through Nine of the Complaint based on the expiration of the applicable statutes of limitations. The success of this attack hinges on the applicability of New Jersey's "discovery rule."

## A. THE NEW JERSEY "DISCOVERY RULE"

■ Under the discovery rule, a cause of action does not accrue "until [a] plaintiff learns, or reasonably should learn, the existence of that *state of facts* which may equate in law with a cause of action." *Burd v. New Jersey Tel. Co.*, 76 N.J. 284, 291, 386 A.2d 1310, 1314 (1978) (emphasis added); *see also Rolax v. Whitman*, 175 F.Supp.2d 720, 727 (D.N.J.2001) (Orlofsky, J.), *aff'd*, —— F.3d ——, 2002 WL 31528790 (3d Cir.2002); *Slater v. Skyhawk Transp., Inc.*, 187 F.R.D. 211, 217 (D.N.J.1999) (Orlofsky, J.). "[I]t is the province of the court to take into account and balance all the equities of each case for purposes of determining whether the party invoking the rule is equitably entitled to its benefit." *Amland Props. Corp. v. Aluminum Co. of America*, 808 F.Supp. 1187, 1191 (D.N.J. 1992). The discovery rule may apply even where the precise party responsible for the injury is not known, as long as it is, or should be, apparent that some party is at fault. *See id.* at 1192.[7]

---

7. "[A] party who knows that he or she has been injured and knows that the injury is the fault of another, but who does not know the identity of the party potentially at fault, can avoid the harsh result the statute of limitations otherwise would impose by naming fictitious 'John Doe' defendants." *Amland Props. Corp. v. Aluminum Co. of America*, 808 F.Supp. 1187, 1192 (D.N.J.1992).

In *New West I,* Judge Walls found that New West had not presented enough evidence to warrant tolling under the discovery rule on its ECRA claim. *See id.,* 909 F.Supp. at 228. Thus, Judge Walls dismissed the ECRA claim because New West had discovered environmentally hazardous drums on the property in March 1985. *Id.* Under the six-year statute of limitations, New West had until March 1991 to file suit but did not do so until 1994, making its ECRA claim "legally stale." *Id.*

New West argues that the discovery rule should apply to its remaining claims because "actual sampling results are necessary for knowledge of contamination, or to impute knowledge of contamination." *See* Br. in Opp'n to Partial Summ. J., at 20. This is not the case. The discovery rule delays the onset of the statute of limitations until the party bringing suit learns, or reasonably should have learned, of a state of facts giving rise to a cause of action. Thus, with respect to environmental claims, tolling under the discovery rule is not dependent on whether actual sampling results have been taken, but whether there are enough indications of environmental contamination to put the plaintiff on reasonable notice of a need to investigate further. *See Staub v. Eastman Kodak Co.,* 320 N.J.Super. 34, 45, 726 A.2d 955, 961 (App.Div.1999) ("Discovering that one might have a basis for an actionable claim means perceiving an injury and believing, or having reason to believe—with a degree of firmness that would lead a reasonable person to investigate the matter if he is interested in seeking redress—that his injury was probably caused by the fault

of another. Certainty is not required."). Indeed, New West's position would create a perverse incentive for plaintiffs with environmental claims to delay sampling in the face of clear signs of environmental contamination in order to avoid being time-barred by the statute of limitations. This would eviscerate the policy behind having a limitations period—to create repose, to eliminate stale claims, and to compel the exercise of a right of action so that an opposing party has a fair opportunity to defend. *See Union City Hous. Auth. v. Commonwealth Trust Co.,* 25 N.J. 330, 335–36, 136 A.2d 401, 403–404 (1957); *see also Martinez v. Cooper Hosp.-Univ. Med. Ctr.,* 163 N.J. 45, 51–52, 747 A.2d 266, 269–70 (2000).

## B. STATUTE OF LIMITATIONS

The applicable six-year statute of limitations to Counts Three and Six through Nine of the Complaint[8] is codified at N.J.S.A. § 2A:14–1:

> Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14–2 and 2A:14–3 of this Title, or for recovery upon a contractual claim or liability, express or implied, not under seal, ... shall be commenced within 6 years next after the cause of any such action shall have accrued.

*Id.* (West 2002). The parties do not dispute the applicability of the six-year stat-

---

8. *See Gahnney v. State Farm Ins. Co.,* 56 F.Supp.2d 491, 495 (D.N.J.1999) (Count Three–Owner's/Operator's Insurance Coverage; Count Nine–Breach of Covenant); *Kemp Indus. Inc. v. Safety Light Corp.,* Civil A. No. 92–95(AJL), 1994 WL 532130, at *17 (D.N.J.

1994) (Count Six–Strict Liability); *Amland,* 808 F.Supp. at 1190 (D.N.J.1992) (Count Seven–Negligence); and *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.,* 181 F.3d 410, 425 (3d Cir.1999) (Count Eight–Fraud).

ute of limitations to New West's state common law contract and tort claims.

The issue before this Court on Viacom's motion for partial summary judgment is whether there is any genuine issue of material fact as to whether New West "discovered," prior to March 9, 1988, the last date before New West's claims would be time-barred under the six-year statute of limitations, any environmental hazards on the Orange Street property that it purchased from Westinghouse. After reviewing the summary judgment record, I find that there is no genuine issue of material fact that the claims upon which Viacom seeks summary judgment are barred under the six-year statute of limitations, N.J.S.A. § 2A:14–1. Indeed, New West had knowledge of the potential environmental hazards on the Orange Street property as early as 1985, but did not file suit until 1994.

Ivor Braka's ("Braka's") deposition testimony indicates that New West had knowledge of environmental hazards prior to 1988. Braka was New West's designated representative for its Fed.R.Civ.P. 30(b)(6) fact deposition, and described himself as "the person in charge" of the Orange Street property, see Dep. of Ivor Braka, 3/18/02, ("Braka Dep. II") at 13:2, attached as Ex. 7 to Paradiso Certif. Braka had been involved in negotiations with Newark Ventures about leasing the Orange Street property. See Braka Dep. II, 31:3–16, 33:2–21; see also Silverman Certif., Ex. 8. Braka testified that the first time he became aware of "big environmental problems," Braka Dep. II, 152:14–15, was in connection with these negotiations, when Newark Ventures commissioned an environmental report on the property. According to the report, there "was an asbestos problem, ... some PCBs in there, and a couple of tanks." Id. at 152:20–23.

New West commissioned its own study of the property in an attempt to retain Newark Ventures as a purchaser, and demonstrate that a clean-up would not be costly. Id., 37:2–17. Based on the reported environmental defects, however, Newark Ventures opted not to purchase the property. Id., 152:24 to 153:4; see also Silverman Certif., Ex. 16 (cancellation letter of 12/15/87). In the cancellation of its option contract with New West, Newark Ventures explained that the cancellation was based on environmental reports from Accutech and PMK Engineering, dated December 10, 1987 and December 14, 1987, respectively. See Dep. of Paul M. Antinori, 4/2/02 ("Antinori Dep."), 24:3–25, attached as Ex. 9 to Silverman Certif.[9] Copies of these reports were enclosed with the cancellation letter, see Antinori Dep., 25:2–9, and also hand-delivered to Ivor Braka, id., 27:15–25. Thus, the latest date when New West was placed on notice of environmental problems at the Orange Street property was "around late '87." Braka Dep. II, 154:22 to 155:2.

New West attempts to minimize the significance of these 1987 reports, arguing that they were produced for purposes of property redevelopment and not for compliance with environmental laws. See Br. in Opp'n to Partial Summ. J., at 22. This, however, is a distinction without a difference. Regardless of the reason the environmental reports were generated, as long as New West was given reasonable notice

9. The Accutech report identified the following as areas of environmental concern: "Underground storage tanks, three tanks, two in use, one stored waste oil; asbestos, significant amounts of pipes and boiler insulation which most likely contains asbestos; transformers, which may contain PCBs; and a former plating area, where it talks about maybe potential chromium contamination." Antinori Dep., 17:18 to 18:4; see also Silverman Certif., Ex. 12, at 2.

of environmental hazards on the Orange Street property, this triggered a duty to investigate, and the discovery rule does not toll the statute of limitations.

This case raises facts very similar to those presented in a Seventh Circuit case, *Vector–Springfield Props., Ltd. v. Cent. Ill. Light Co., Inc.*, 108 F.3d 806 (7th Cir. 1997). There, the plaintiff invoked Illinois' discovery rule [10] in an unsuccessful attempt to toll the statute of limitations on its environmental contamination claims. The court rejected this argument, finding that the plaintiff had adequate and timely notice of environmental contamination based on a consultant's letter, which recommended a preliminary investigation of the affected property, a former gas plant site. *Id.* at 807–10. Even though the letter did not explicitly state that the property was contaminated, the court found that "the only reasonable inference to be drawn from these undisputed facts . . . is that a reasonable person, possessed of such a letter, would be put on notice of its injury and that it should determine whether legally actionable conduct was involved. . . ." *Id.* at 810. Likewise, the 1987

Accutech and PMK reports provided to New West gave it reasonable notice of environmental contamination at the Orange Street property.

To reiterate, the discovery rule postpones the onset of the statute of limitations "until [a] plaintiff learns, or reasonably should learn, the existence of that *state of facts* which may equate in law with a cause of action." *Burd, supra,* 76 N.J. at 291, 386 A.2d at 1314 (emphasis added). The statute is *not* tolled until the plaintiff learns the *legal significance* of those facts. *See SC Holdings, Inc. v. A.A.A. Realty Co.,* 935 F.Supp. 1354, 1367 (D.N.J.1996) (emphasis added) (citing *Burd,* 76 N.J. at 291–93, 386 A.2d at 1314–15). Here, New West had notice of a potentially actionable "state of facts," but did not act on them in a timely manner.[11]

As Judge Walls noted, New West arguably had notice of environmental contaminants as early as 1985. This is evidenced by a letter sent from New West to CECOS, the company that New West hired to clean the Orange Street property of hazardous materials. *See* Silverman Certif., Ex. 20 (letter from P. Safran to CECOS of

**10.** Under the Illinois discovery rule, which is similar to New Jersey's, the statute of limitations begins to run when the plaintiff becomes "possessed of sufficient information concerning its injury to put a reasonable person on inquiry to determine whether actionable conduct was involved." *Vector–Springfield Props., Ltd. v. Cent. Ill. Light Co., Inc.,* 108 F.3d 806, 809 (7th Cir.1997) (citations omitted).

**11.** I find New West's expert affidavits unpersuasive. Girish Mehta explains that the 1987 reports identify "only potential areas of concern to the environment . . . without any determination of proof whether or not environmental contamination exists." Aff. of Girish Mehta, 9/9/02, ¶ 4. The statute of limitations, however, "is triggered by a plaintiff's knowledge of material facts, not by conclusive proof of every relevant fact." *SC Holdings, Inc. v. A.A.A. Realty Co.,* 935 F.Supp. 1354, 1367

(D.N.J.1996) (citing *Hatco Corp. v. W.R. Grace & Co.,* 801 F.Supp. 1309, 1324 (D.N.J.1992)) (internal quotations omitted). New West contends that "the first time that New West had knowledge of any actual environmental contamination in the building at 95 Orange Street" was April 30, 1992, the date it received its "Report of Preliminary Interior Sampling." Br. in Opp'n to Mot. for Partial Summ. J., at 25; Paradiso Certif., Ex. 7. New West's other expert, Barry Skoultchi, explained that sampling of the Orange Street property would have taken four to five months to complete, *see* Aff. of Barry Skoultchi, 9/10/02, ¶ 5, and thus, New West argues it could only have had actionable notice starting in March 1988, within the limitations period. This timing argument is contradicted by the very report on which New West relies, which took less than two months to complete from the date of sampling on March 5, 1992. *See* Paradiso Certif., Ex. 7, § 1.0.

3/8/85); *see also* Dep. of Peter Safran, 12/14/94, 40:23 to 41:16, attached as Ex. 6 to Silverman Certif. This letter from Peter Safran, a New West employee, informed CECOS that some hazardous items had not been removed from the property, including, *inter alia,* four fifty-five gallon drums labeled "waste benzene," one of which developed a leak, and a fifty-five gallon drum of sodium cyanide with a loose top. *See* Silverman Certif., Ex. 20.

Braka testified that he was aware of both the age and the prior use of the property when New West purchased it. *See* Braka Dep. I, 243:4–15. Indeed, the potential environmental hazards on the Orange Street property were no secret, as explained in New West's Complaint: "During the period when Westinghouse owned and operated, and/or leased, the Orange Street site, it employed, *inter alia,* various materials including diesel fuels, solvents, degreasing materials, p[o]lychlorinated biphenyls (PCBs), trichloroethelene, and other hazardous substances in its manufacturing business at said property." Compl. ¶ 11, attached to Silverman Certif. as Ex. 3.

Thus, the summary judgment record contains no genuine question of material fact regarding whether New West had knowledge of environmental hazards on the Orange Street property in late 1987. New West had six years from that point in which to pursue a cause of action, but did not do so. Accordingly, I shall grant Viacom's Motion for Partial Summary Judgment on Counts Six through Nine [12] of the Complaint. *Accord Amland,* 808 F.Supp.

at 1193 (finding claims based on environmental contamination time-barred as a matter of law and noting "[i]t is well within the province of this court to deal with issues which are potentially factual in nature.").

## V. INDEMNIFICATION CLAIM

In Count Three of the Complaint, New West seeks indemnification as a third-party beneficiary for its environmental cleanup costs directly from Viacom's insurance carrier. *See* Compl. ¶¶ 35–37. New West has agreed, however, "to dismiss Count Three of its Complaint without prejudice to bring and renew such claim at a later time." Br. in Opp'n to Mot. for Partial Summ. J. at 36. Viacom does not consent to dismissal of this claim without prejudice, *see* Reply Br. in Further Supp. of Mot. for Partial Summ. J., at n. 2, p. 3. Accordingly, this court shall grant summary judgment on Count Three as unopposed on the merits, with prejudice, pursuant to Fed.R.Civ.P. 56(e). When confronted with a properly supported motion for summary judgment, New West cannot simply respond by withdrawing its indemnification claims in an attempt to preserve the merits of those claims for another day or for another forum. *Id.; see also Amland,* 808 F.Supp. at 1196.

## VI. CONCLUSION

For the reasons stated above, I shall grant the Motion for Partial Summary Judgment of Defendant, Viacom, Inc., on

---

**12.** The parties dispute whether the discovery rule applies to New West's contract claims as well as its tort claims. The New Jersey Supreme Court has explained that the "rationale for employing the discovery rule in tort- or fraud-type actions ... does not carry over to most contract actions." *County of Morris v. Fauver,* 153 N.J. 80, 110, 707 A.2d 958, 972 (1998). This is because "most contract actions presume that the parties to a contract know the terms of their agreement and a breach is generally obvious and detectable with any reasonable diligence." *Id.* I need not address this issue because I find that the discovery rule does not toll the statute of limitations for any of New West's causes of action.

Count Three and Counts Six through Nine of the Complaint. The parties have stipulated to the dismissal of Count Two with prejudice, and Count Four shall be dismissed in accordance with Judge Walls' ruling in *New West I*, 909 F.Supp. at 228. The Court shall enter an appropriate form of Order.

## ORDER

This matter having come before the Court on the Motion of Defendant, Viacom, Inc., for Partial Summary Judgment, pursuant to Fed.R.Civ.P. 56, James Stewart, Esq., LOWENSTEIN SANDLER, P.C., and Mark D. Shepherd, Esq. and Lisa G. Silverman, Esq., BABST, CALLAND, CLEMENTS AND ZOMNIR, P.C., appearing on behalf of Defendant, Howard P. Davis, Esq., THE LAW OFFICES OF HOWARD P. DAVIS, ESQ., and Marisa Y. Paradiso, Esq., THE LAW OFFICES OF MARISA Y. PARADISO, appearing on behalf of Plaintiff, New West Urban Renewal Co.; and,

The Court having considered the submissions of the parties, for the reasons set forth in the OPINION filed concurrently with this ORDER;

IT IS, on this 18th day of November, 2002, hereby ORDERED that:

1. Counts Two and Four of New West's Complaint are DISMISSED with prejudice.

2. Viacom's Motion for Partial Summary Judgment on Count Three and Counts Six through Nine of the Complaint is GRANTED.